**Joan Carol Ellis ROBERTS, Appellant,**

v.

**Dr. Milas Eldon DAVIS, Jr., and Dr. George Alan Aydelott, Appellees.**

**No. 06–04–00057–CV.**

Court of Appeals of Texas, Texarkana.

Submitted Feb. 16, 2005.

Decided March 15, 2005.

Rehearing Overruled April 13 and 26, 2005.

Joan Carol Ellis Roberts, Mount Pleasant, pro se.

Jeffery C. Lewis, Atchley, Russell, Waldrop & Hlavinka, LLP, Texarkana, for appellees.

Before ROSS, CARTER, and CORNELIUS,* JJ.

OPINION

WILLIAM J. CORNELIUS, Justice (Retired).

Joan Carol Ellis Roberts appeals from an adverse summary judgment in her libel suit against Dr. Milas Eldon Davis, Jr., and Dr. George Alan Aydelott.

Roberts was employed as a CAT Scan technician in the radiology department of Titus Regional Medical Center in Mount Pleasant, Texas. Doctors Davis and Aydelott were staff radiologists under contract with the medical center. The doctors became concerned about Roberts' performance, work habits, and attitudes, and they reported these concerns and their complaints to the medical center's administrators on several occasions. Roberts, in turn, initiated several administrative and judicial proceedings against the doctors.

---

* William J. Cornelius, Chief Justice, Retired,      Sitting by Assignment.

The doctors made specific complaints about Roberts in two letters. One was dated March 7, 2002, and was signed by both Dr. Davis and Dr. Aydelott. The other was dated April 9, 2001, and was signed only by Dr. Davis. Both letters were addressed to George Burns, director of radiology of the medical center. Both letters are attached to this opinion as appendices.

The doctors filed a joint motion for summary judgment. They attached to their motion copies of the two letters written to Burns, as well as other summary judgment evidence consisting of various documents and affidavits of their own as well as an affidavit of Gene Lott, director of human resources of the medical center. The only specific grounds for summary judgment raised by the doctors in their motion were (1) limitations barred Roberts' suit; (2) the letters are not defamatory, including the defense that the contents are true; and (3) the statements by the doctors were protected by qualified privilege.

Roberts responded to the doctors' motion for summary judgment. Her response controverted the three main issues raised by the doctors in their motion, and also raised some procedural errors she alleged would make summary judgment erroneous. Roberts supported her response by summary judgment evidence consisting of documents and affidavits of various persons, including her own affidavit. The trial court granted the doctors' motion in a general order that did not state the specific reasons for the judgment.

On appeal Roberts contends the trial court erred in: overruling her special exceptions to the doctors' affidavits; modifying the judgment after it was initially rendered, including the addition of a recovery of costs to the doctors; rendering a judgment that fails to state it is based on the pleadings; and granting summary judgment overruling Roberts' objections to the doctors' affidavits. Roberts also contends the trial court erred in granting summary judgment because the doctors failed to conclusively prove by competent summary judgment evidence that limitations barred her suit; or that the letters were not defamatory; or that qualified privilege applied to the contents of the letters.

■ Defendants moving for summary judgment are entitled to judgment only if the summary judgment evidence conclusively disproves one or more essential elements of the plaintiff's causes of action, or conclusively establishes one of the defendant's affirmative defenses. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex.1996).

■ We will first address Roberts' procedural complaints. Roberts complains of the trial court's overruling of her special exceptions to the affidavits the doctors attached to their motion for summary judgment. Roberts contends the affidavits were conclusory and based on hearsay rather than on facts. We find that the trial court properly overruled Roberts' objections. The affidavits contain sufficient statements of facts to at least raise fact questions as to the issues in controversy. If some of the statements in the affidavits are conclusions or are based on hearsay, the error is harmless because sufficient statements of facts remain to support the summary judgment. *See Brown v. Owens*, 663 S.W.2d 30, 34 (Tex.App.-Houston [14th Dist.] 1983), *rev'd in part on other grounds*, 674 S.W.2d 748 (Tex.1984); *Watson v. Druid Hills Co.*, 355 S.W.2d 65, 68 (Tex.App.-Dallas 1962, writ ref'd n.r.e.).

■ The trial court's modification of the judgment, including the award of costs, was not error. The modification was made while the trial court retained plenary power over the judgment. *Owens-Corning Fiberglas Corp. v. Wasiak*, 883 S.W.2d 402,

406 (Tex.App.-Austin 1994, no writ). The inclusion of an award of costs in the modified judgment was not error. Rule 131 of the Texas Rules of Civil Procedure provides that "the successful party to a suit shall recover from his adversary all costs incurred therein." TEX.R. CIV. P. 131. An additional hearing on the award was not necessary in this instance. And, although the judgment must be based on the pleadings, there is no requirement that the judgment state in express terms that it is so based. TEX.R. CIV. P. 301.

■ When an order granting summary judgment is in general terms and does not state the specific grounds on which it is based, the summary judgment may properly be sustained on appeal only on a ground or grounds that are expressly raised in the motion for summary judgment or a response thereto. TEX.R. CIV. P. 166a(c); *Travis v. City of Mesquite,* 830 S.W.2d 94, 100 (Tex.1992); *Oden v. Marrs,* 880 S.W.2d 451, 454 (Tex.App.-Texarkana 1994, no writ). Thus, the summary judgment here can be sustained only if the summary judgment evidence conclusively proves that Roberts' suit is barred by limitations, or the letters are not defamatory, or if they are defamatory, the statements made therein are protected by qualified privilege.

■ The summary judgment evidence does not conclusively prove that Roberts' suit is barred by limitations. The statute of limitations applicable to libel is one year. TEX. CIV. PRAC. & REM.CODE ANN. § 16.002(a) (Vernon 2002). A cause of action for libel accrues on the date of the publication alleged to be defamatory. *Ellert v. Lutz,* 930 S.W.2d 152, 156 (Tex. App.-Dallas 1996, no writ). The letters involved here were written April 9, 2001, and March 7, 2002, respectively. Roberts' suit was filed March 10, 2003. Thus, unless the discovery rule operates to defer the beginning of the limitations period, limitations ran on Roberts' suit March 7, 2003, before her suit was filed.

■ The discovery rule in libel cases applies when the publication is inherently undiscoverable, and it operates to defer the beginning of the limitations period until the plaintiff actually discovers the libel, or by the exercise of reasonable diligence should have discovered it. *Kelley v. Rinkle,* 532 S.W.2d 947 (Tex.1976). In a summary judgment context where limitations is an issue, the movant for summary judgment has the burden to conclusively establish that the discovery rule does not apply.

The doctors' summary judgment evidence supporting limitations relies on evidence that the allegedly libelous letters were in Roberts' personnel files, and on evidence that Roberts had an opportunity to review the letter of Dr. Davis at a counseling session June 7, 2001. Roberts' summary judgment evidence contradicts these allegations and states she did not know of the defamatory statements or the letter until she first saw the letters in April or May of 2002. Similarly, the summary judgment evidence does not show when the letters were placed in Roberts' personnel file. There is therefore no summary judgment proof that, even if Roberts had searched her personnel files, she would have known about the letters before April or May of 2002, when she contends she first saw the letters. We conclude from the summary judgment evidence the doctors failed to conclusively prove that the discovery rule did not apply, and failed to conclusively prove that limitations barred Roberts' suit. The summary judgment cannot be upheld on the basis of limitations.

■ The doctors also moved for summary judgment on the ground that the letters were not defamatory. Defamation

in written form is libel. Libel is defined as:

A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead, or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997).

■ Whether a statement is reasonably capable of a defamatory meaning, and whether a statement is an opinion or a statement of fact, are questions of law for the court. *Musser v. Smith Protective Serv., Inc.*, 723 S.W.2d 653, 654 (Tex.1987). But if a statement's meaning is ambiguous, the question whether it is defamatory is one for the jury. *Id.* To sustain the summary judgment on the basis that the letters were not defamatory, the doctors here must have proven by uncontroverted summary judgment evidence that the letters are not defamatory.

■ We find that the letter of March 7, 2002, signed by Dr. Aydelott and Dr. Davis, as a matter of law is not defamatory. As can be seen by a reading of the letter, it is a critique by Roberts' supervisors of her job performance. It accuses her of deliberate obstruction and deteriorating behavior in her work and her relationships with other employees, and suggests that her attitude contributes to a dysfunctional work situation in the CAT Scan section. The letter does not accuse her of any crime or question her honesty, integrity, or virtue, and all the criticism is related to her work, which is a natural and proper concern on the part of an employee's supervisors or employer. *See Schauer v. Mem'l Care Sys.*, 856 S.W.2d 437 (Tex.App.-Houston [1st Dist.] 1993, no writ), *partially overruled on other grounds, Huckabee v. Time Warner Entm't Co., L.P.*, 19 S.W.3d 413, 423 (Tex. 2000). As the letter of March 7, 2002, is not defamatory, the summary judgment as to Dr. Aydelott will be affirmed.

■ We find, however, that the doctors' summary judgment evidence does not conclusively prove that the letter of April 9, 2001, signed only by Dr. Davis, is not defamatory. Unlike the March 7, 2002, letter, the April 9, 2001, letter accuses Roberts of violations of state and federal law, repetitious and malicious illegal malpractice, manufacture of false reasons for violating orders, and illegally practicing medicine. Roberts controverted these charges in her summary judgment evidence, and we conclude that at least a fact issue is raised as to the defamatory nature of this letter. The courts generally hold that falsely accusing a person of criminal conduct is defamatory as a matter of law. *Christy v. Stauffer Pub., Inc.*, 437 S.W.2d 814 (Tex.1969).

■ The doctors contend the letters are not defamatory because the statements made in them are true. Substantial truth is a defense to a charge of libel. Doctor Davis' summary judgment evidence, however, does not assert that the statements in the letter are true or even substantially true. The only assertion about truth is his statement that, "The information contained in said letters was true and correct to the best of my knowledge and belief." That statement is an opinion. It is not a statement that the information is true.[1] The summary judg-

---

1. A good faith belief in the truth of a state

ment may be evidence that the statement was

ment evidence does not support the summary judgment on the basis of the truth of the statement.

■■■■■ The doctors asserted in their motion for summary judgment that qualified privilege applied to their statements as a matter of law. A qualified privilege extends to statements made in good faith on a subject in which the maker has an interest or duty, to another person having a corresponding interest or duty. *Dixon v. Southwestern Bell Tel. Co.*, 607 S.W.2d 240 (Tex.1980); *Leatherman v. Rangel*, 986 S.W.2d 759 (Tex.App.-Texarkana 1999, writ denied); *Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d 197 (Tex. App.-Texarkana 1993, writ denied). Qualified privilege justifies the statements if they are made without malice. *Dixon v. Southwestern Bell Tel. Co.*, 607 S.W.2d at 242; *Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d at 199. The privilege is peculiarly applicable to communications between employers and employees. The elements of qualified privilege are good faith, an interest to be upheld, a statement limiting the communication to the proper scope, a proper occasion, and publication in a proper manner and to proper parties only. *Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d at 199. When a defendant in a defamation suit moves for summary judgment on the basis of qualified privilege, the defendant has the burden of conclusively proving that the statements were not made with malice.

■■■■■ The summary judgment evidence here conclusively establishes all of the essential elements of qualified privilege as to the Davis letter, except lack of malice. Dr. Davis' summary judgment evidence states that he made the statements solely in an effort to fulfill his duties to the medical center and its radiological department, and to provide quality care and prevent the endangerment of the medical center's patients. Roberts' summary judgment evidence, on the other hand, points to the statements of Dr. Davis charging Roberts with criminal conduct, as well as statements that the doctors had tried to get Roberts terminated, but she "conned" the administration to prevent her termination. Dr. Davis further states that Roberts violated orders just to "show us who's boss," and states he will continue to make such reports "until someone discharges her from employment at TRMC." These statements are such that a reasonable person could infer they were prompted by malice. In Roberts' summary judgment evidence, she alleges the charges of criminal conduct are false and the doctor's statements were motivated by malice. Malice cannot be inferred from the falsity of the statements alone, *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.), but malice may be inferred if the statements are made with knowledge that they are false, or with reckless disregard of their truth. Dr. Davis asserted in his affidavit that all of the information he put in his letter was true and correct to the best of his knowledge and belief. That assertion may be sufficient to show a lack of malice if uncontradicted, but Roberts' summary judgment evidence contradicted it here, thus raising a fact issue on malice. Roberts' summary judgment evidence that Dr. Davis made these criminal charges when he had full knowledge of the circumstances raises an inference that the doctor knew the criminal charges were false or

made without malice, but it is not sufficient, even if uncontradicted, to prove that the statement is actually true. *See Mitre v. La Plaza Mall*, 857 S.W.2d 752 (Tex.App.-Corpus Christi 1993, writ denied); *Johnson v. Southwestern Newspapers Corp.*, 855 S.W.2d 182 (Tex.App.-Amarillo 1993, writ denied).

made them with reckless disregard for their truth. Dr. Davis in his affidavit stated that all the statements in his letter were "true to the best of my knowledge and belief." Thus, we believe a fact issue was raised on the issue of malice, and for that reason summary judgment on the basis of qualified privilege cannot be sustained as to Dr. Davis.

Because we find the summary judgment evidence proves that the letter of March 7, 2002, from Dr. Aydelott and Dr. Davis is not defamatory, we affirm the summary judgment as to Dr. Aydelott. Because we find the summary judgment evidence raises a fact issue whether the letter of April 9, 2001, from Dr. Davis is defamatory and the summary judgment evidence raises a fact issue as to Dr. Davis' malice, we reverse the summary judgment as to Dr. Davis. Roberts' cause of action against Dr. Davis is severed and remanded to the trial court for trial.

April 9, 2001

George Burns
Director of Radiology
TRMC
Mt. Pleasant, Texas 75455

This is a complaint lodged against Joan Roberts for deliberate, persistent, malicious, and repetitious malpractice of radiology technology. Therefore, I have no choice but to make formal complaint of these actions in an effort to protect the patient's rights, the radiology department of TRMC and myself, as a responsible Radiologist in charge, as these criminal acts occur.

The acts are predictable that she will deliberately not follow medical orders or directives by the referring physicians, the radiologists, or her supervisors and will manufacture false reasons for performing in violation of orders. This has occurred with regular and predictable patterns whenever working alone, such as at nights or weekends or when Darrell Beck is not around, to prevent this from happening when possible. This weekend is a prime example of such actions and occurred as follows. The ED added a number of cases as well as the floor on Friday, 4/6/01. As usual, Joan pushed our out-patients and in-patients down on the list to be done, and all were not done (DB not here on 4/6/01). Therefore, ▮▮▮▮▮▮▮▮ CT of abdomen and pelvis was postponed until Saturday morning, 4/7/01, with my permission and unbeknown to me (but not Joan) so was ▮▮▮▮▮ ▮▮▮▮CT head also put off until Saturday morning.

So on Saturday morning, I asked Jay, the chief technician in charge on weekends, about when ▮▮▮▮▮▮▮▮got her oral contrast for the CT abdomen and pelvis. He informed me that Joan had told him and the nurse on the floor to give the contrast later in the morning that she would not be in until later. I had Jay send the contrast up to the floor for Ms. ▮▮▮▮▮ to ingest and had Jay recall Joan again to come in and begin the study at 10 AM. He did and she said that she was going to take a shower and would be in later, and did not show up until about 10:45. After the ▮▮▮▮ case, she then performs the ▮▮▮▮▮▮ ED case prior to the in-patient, ▮▮▮▮▮▮▮▮, head scan and all of this took until about 1:30 or 2 PM to finish. This, of course, prevented my leaving for three hours, which was the intention.

Then, on Sunday morning, 4/8/01, she had an ED CT head scan about 6 AM on ▮▮▮▮ ▮▮▮▮▮▮▮and called me in about 7 AM. She then left, knowing that there were two in-patients to be done, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. She doesn't come back to do these until 10:45 AM, while also running in another ED head on ▮▮▮▮prior to▮▮▮▮head CT and not finishing up until after noon time. All of these put-offs and delays are to intentionally violate our medical directives and orders and to show us "who's boss". This has been her actions for a long time. Then to further violate State and Federal Laws, she

offers to show the referring physicians what the studies show, whether they ask or not. This has continued even with warnings, not to practice medicine and malpractice.

These, and many other malpractice acts have prompted us (physicians and radiology directors) to have the administration terminate her employment, but her many excuses con the administration and others and has prevented this from occurring, to date.

I will continue such reports on Joan Roberts' illegal malpractice actions until someone discharges her from employment at TRMC.

Sincerely submitted,

Milas E. Davis, Jr., MD

MED/pk

March 7, 2002

Mr. George Burns, R.T.
Director of Radiology
Titus Regional Medical Center
2001 N. Jefferson
Mt. Pleasant, Texas    74544

Dear George,

 As you well know, the dysfunctional work situation in our CT section has continued to worsen. Several months ago, in an attempt to improve the situation, we asked you to appoint Mr. Darrell Beck as "lead tech" in that section. The intent was that Mr. Beck could provide the needed direction to keep himself, Ms. Joan Roberts, and Mr. Keith Moffett working more smoothly and productively together.

 To an extent, this appointment has been a successful endeavor for the rest of the department. We (the radiologists), as well as the rest of the department has a reliable tech that assures that our orders are followed and that the flow through CT is maximized. On the other hand, Ms. Roberts has sabotaged that effort from the beginning. She deliberately obstructs all Darrell's efforts and adds unnecessary stress to every situation. In addition, she has become very unreliable. Yesterday morning, March 6, 2002, after receiving a phone call, she called Adam Larson and informed him that she had become ill and had to leave. Neither of her co-workers knew she had left. This morning, she called you at 4:50 am to tell you she was not coming to work. Keith was scheduled to be on vacation and Darrell was supposed to come in at 9:00 am. This left our CT department uncovered until Darrell arrived. She was also supposed to be on call tonight. This required Darrell to change his plans for the evening so he could cover her call. This behavior is occurring frequently. It has also occurred in the form of not responding to her pager or not assuring that her phone is available. Darrell and Keith have both had to respond during these times.

 Ms. Robert's progressively deteriorating behavior has pushed both Darrell and Keith near the breaking point. Unless this is corrected soon, our department will loose Darrell, Keith, or both. This deteriorating behavior is also destructive to the moral of the total radiology department. We ask you to immediately remove Ms. Roberts from the CT section, either by termination, lateral movement in the radiology department or to another department.

Sincerely,

George Aydelott, M.D.
Medical Director
Department of Radiology

Milas Davis, M.D.
Staff Radiologist
Department of Radiology

cc:  Steve Jacobson, Frances Standridge, Gene Lott, All Board Members