In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00152-CR


______________________________




HEATHER CHERIE DUNAWAY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 34619-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Heather Cherie Dunaway appeals the trial court's decision to revoke her community
supervision for the crime of possessing more than one gram but less than four grams of
methamphetamine. See Tex. Health & Safety Code Ann. § 481.102(6) (Vernon Supp. 2007)
(defining methamphetamine as penalty group 1 substance), § 481.112(c) (Vernon 2003)
(criminalizing possession of penalty group 1 substances). Dunaway pleaded "true" to violating the
conditions of her community supervision as alleged in the State's amended motion to revoke. 
Dunaway now raises two issues. We overrule both issues and affirm the trial court's judgment.

I. Factual and Procedural Background

 On April 16, 2007, Dunaway pled guilty to possessing more than one gram but less than four
grams of methamphetamine and reserved her right to have a jury assess her punishment. The
following day, a jury was selected, considered her testimony, and ultimately assessed her punishment
at ten years' imprisonment and a fine of $5,000.00. The jury further found that Dunaway has never
been convicted of a felony and recommended the prison sentence be probated. (1) The trial court, in
reading the jury's verdict, also noted that the jury had included additional recommendations with its
punishment verdict. Those recommendations included that Dunaway "[a]ttend AA and/or NA twice
a week with accountability," maintain "[v]erifiable employment," "[a]ttend parenting class[es,]" be
tested for illegal drug use on a monthly basis, and have monthly face-to-face meetings with a
community supervision officer. The trial court then recessed the case to allow Dunaway to meet
with a community supervision officer so that a presentencing report could be prepared for the trial
court's consideration. 

 The next morning, on April 18, the trial court heard recommendations from both the Gregg
County District Attorney and from Dunaway's trial counsel regarding additional conditions of
community supervision. In addition to the jury's recommended conditions, the trial court further
ordered that Dunaway complete four hours of community service each month, that she spend fifteen
consecutive weekends in the Gregg County Jail, and that she not consume any alcohol during the
period of community supervision. The trial court also imposed other "standard" conditions of
community supervision that were typically ordered by the 124th Judicial District Court. See Tex.
Code Crim. Proc. Ann. art. 42.12 (Vernon Supp. 2007) (outlining community supervision available
conditions).

 The State subsequently filed both an application and an amended application to revoke
Dunaway's community supervision. The trial court conducted a hearing on the amended application
on August 16, 2007, at which Dunaway pled "true" to having violated her conditions of community
supervision as alleged in the State's amended revocation motion. The trial court subsequently found
the State's allegations to be "true," revoked Dunaway's community supervision, and imposed the
original ten-year prison sentence and $5,000.00 fine. 

II. Was the Trial Court Authorized to Impose Additional Conditions of Community
Supervision?


 In her first point of error, Dunaway contends the trial court's authority under Article 42.12,
Section 12 of the Texas Code of Criminal Procedure to set the conditions of community supervision
must be held to be subordinate to the jury's authority under Article 42.12, Section 4 of the Texas
Code of Criminal Procedure to set the conditions of community supervision; based on such
subordination, contends Dunaway, the trial court was without authority (and therefore erred) when
it imposed an additional condition of community supervision on Dunaway that had not been
recommended by the jury. The thrust of Dunaway's contention is that, because the jury did not
include the requirement that Dunaway serve weekends in jail as a part of the jury's list of
recommended supervision conditions, the trial court was without authority to impose such an
additional condition.

 Section 10 of Article 42.12 outlines a trial court's authority to impose, modify, or revoke
community supervision. That provision's first sentence states, "Only the court in which the
defendant was tried may grant community supervision, impose conditions, revoke the community
supervision, or discharge the defendant, unless the judge has transferred jurisdiction of the case to
another court with the latter's consent." Tex. Code Crim. Proc. Ann. art. 42.12, § 10(a) (emphasis
added). Another provision within Article 42.12 provides,

 The judge of the court having jurisdiction of the case shall determine the conditions
of community supervision and may, at any time, during the period of community
supervision alter or modify the conditions. The judge may impose any reasonable
condition that is designed to protect or restore the community, protect or restore the
victim, or punish, rehabilitate, or reform the defendant.


Tex. Code Crim. Proc. Ann. art. 42.12, § 11(a) (emphasis added).

 The clear language in multiple provisions of Article 42.12 grants exclusive authority to set
the conditions of community supervision to the presiding jurist of the trial court in which the
defendant was tried. The jury's recommended conditions of community supervision were, therefore,
just that: mere recommendations. The authority to set community supervision conditions is not, nor
has it ever been, vested with a jury. Accordingly, because our law makes clear that such power lies
with the trial court rather than the jury, we conclude the trial court did not err by revoking Dunaway's
probated sentence based on a condition of community supervision that had not been recommended
by her punishment jury but which had nonetheless been imposed by the duly authorized trial court. 
See Tex. Code Crim. Proc. Ann. art. 42.12, § 12(c); cf. Johnson v. State, 240 S.W.3d 76, 78-79
(Tex. App.--Austin 2007, pet. granted) ("Jail time as a condition of community supervision is
authorized by statute and is within the trial court's discretionary authority to impose or not."). 

 We overrule Dunaway's first point of error.

III. Did Insufficient Evidence Support the Trial Court's Revocation Decision?

 In her second point of error, Dunaway contends evidence is insufficient to support the trial
court's decision to revoke her community supervision. More specifically, she argues that, because
she only pled true to violating community supervision conditions that had not been recommended
by the jury, because those additional conditions (added and imposed by the trial court) were "void,"
and because she cannot be lawfully held to have violated a "void" condition of community
supervision, then her plea of "true" fails to satisfy the requirement that she violated any properly
imposed condition of community supervision that originated with the jury rather than the trial court. 

 As stated above, our law grants exclusive authority to set the terms and conditions of
community supervision with the trial court--not the jury. Tex. Code Crim. Proc. Ann. art. 42.12,
§§ 10-12. Accordingly, because such authority resides in the trial court, the trial court could
lawfully impose conditions beyond those recommended by the jury. (2) The additional terms placed
on Dunaway by the trial court, which were beyond those terms recommended by the jury, were
therefore not void. They could thus form the proper basis for revocation on Dunaway's plea of "true"
to having violated those terms. See Moses v. State, 590 S.W.2d 469, 470 (Tex. Crim. App. [Panel
Op.] 1979); Atchison v. State, 124 S.W.3d 755, 758 n.4 (Tex. App.--Austin 2003, pet. ref'd); Jones
v. State, 112 S.W.3d 266, 269 (Tex. App.--Corpus Christi 2003, no pet.). Dunaway's contention
to the contrary is without merit.

IV. Conclusion

 For the reasons stated, we overrule Dunaway's appellate issues and affirm the trial court's
judgment.



 Jack Carter

 Justice


Date Submitted: July 14, 2008

Date Decided: July 15, 2008


Do Not Publish
1. The jury did not recommend that the fine portion of Dunaway's sentence be probated. 
2. We do not believe Article 42.12 would have prohibited the trial court from ignoring any of
the jury's recommendations regarding community supervision conditions, should the trial court have
chosen to do so--especially in light of the trial court's legislatively imposed duty to insure that all
community supervision terms are designed to "protect or restore the community, protect or restore
the victim, or punish, rehabilitate, or reform the defendant." Tex. Code Crim. Proc. Ann. art.
42.12, § 11(a).



 a preponderance of the evidence that
she did not discover, or through the exercise of reasonable care and diligence should
not have discovered Dr. Davis' letter of April 9, 2001, at any time before April 9,
2002?

 

The jury answered, "No." 

 Roberts contends that the jury question as submitted was incorrect and that the court should
instead have used the question which she provided. However, her only objection at trial to the issue
as submitted was that her requested instruction (not a question) was not submitted. Further, the
charge was effectively the same as a proposed question submitted by Roberts. Her proposed jury
question presumed that the letter was published April 9, 2001, and questioned only whether she
discovered the letter before April 9, 2002. (3) Thus, whether the jury issue was properly submitted, as
now presented for review, was not preserved for our review. See Tex. R. App. P. 33.1; Tex. R. Civ.
P. 274.

 In a related issue, Roberts contends that the trial court should have submitted an instruction
that she provided. Although it is not clear from her brief, it appears she is contending that her
instruction number 15 should have been submitted because it explained how "the factor of accrual
began the time limit, that factor being the publications or circulations." Neither the terms "accrual"
nor "publications or circulations" are used in this question. The question is set out simply and in a
straightforward fashion. We review a trial court's decision not to submit a particular instruction
under an abuse of discretion review. In re V.L.K., 24 S.W.3d 338, 341 (Tex. 2000). 

 The jury was asked whether Roberts proved she should not have discovered the letter at any
time before April 9, 2002. As the instruction would not have materially assisted the jury in deciding
the matter immediately before it, the court was within its discretion to choose not to submit that
instruction.

 Roberts also argues that her instruction should have been given because she was suing for
additional, later publications of the allegedly libelous material. She now suggests she alleged that
the action of the hospital in sending a copy of Davis' letter to the Equal Employment Opportunity
Commission (EEOC) in response to her claim against the hospital for an unrelated sexual harassment
charge was another, different, and actionable publication for which Davis was responsible. Her
petition contained only one other alleged defamatory publication, a letter dated March 7, 2002,
signed by Drs. George Aydelott and Davis. This Court held in the summary judgment appeal that
letter was not defamatory as a matter of law. Roberts, 160 S.W.3d at 256. Roberts' petition focused
solely on the act showing that "Davis published to George Burns, the Director of Radiology, a letter
of libel . . . ." Thus, other possible actionable publications, by other parties, of the letter were not
before the trial court and cannot now be considered. 

 The contentions of error are overruled.

Sufficiency of the Evidence 

 Roberts also contends that the jury's finding is against the great weight and preponderance
of the evidence--that she proved her position as a matter of law. See O'Neil v. Mack Trucks, Inc.,
542 S.W.2d 112 (Tex. 1976). When a party attacks the legal sufficiency of an adverse finding on
an issue on which he or she has the burden of proof, that party must demonstrate on appeal that the
evidence establishes, as a matter of law, all vital facts in support of the issue. Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 241 (Tex. 2001); Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and
fair-minded people to reach the verdict under review." City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. Id. So long
as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment
for that of the fact-finder.  Id. at 822. The trier of fact is the sole judge of the credibility of the
witnesses and the weight to give their testimony. Id. at 819. Although we consider the evidence in
a light most favorable to the challenged findings, indulging every reasonable inference that supports
them, we may not disregard evidence that allows only one inference. Id. at 822. 

 Davis asserts that Roberts did not preserve this issue for review because she did not file any
trial or post-trial motion raising such a challenge. A "no-evidence" point of error is preserved
through one of the following: 1) a motion for instructed verdict, 2) a motion for judgment
notwithstanding the verdict, 3) an objection to the submission of the issue to the jury, 4) a motion
to disregard the jury's answer to a vital fact issue, or 5) a motion for new trial. T.O. Stanley Boot Co.
v. Bank of El Paso, 847 S.W.2d 218, 220 (Tex. 1992); Chappell Hill Bank v. Lane Bank Equip. Co.,
38 S.W.3d 237, 247 (Tex. App.--Texarkana 2001, pet. denied).

 Roberts' motion for new trial is directed solely and specifically at a number of alleged errors
in the trial. It does not state at any point that the evidence was either legally or factually insufficient
to support the verdict rendered; rather, it specifies error in the way that the court presented the case
to the jury for decision. There is no motion to disregard, motion for instructed verdict, or motion
for judgment notwithstanding the verdict. There were a number of issues raised about the way in
which the issue was submitted to the jury, but none of those issues suggest that there was no
evidence to support submission; rather, they complain about the way in which the charge was
worded. Thus, by long-standing authority, the issue of legal sufficiency has not been preserved for
our review. 

 Further, in considering Roberts' challenge to the factual sufficiency of the evidence to sustain
the jury's answer to the question before it, it is also established that to raise a factual insufficiency
challenge on appeal, a point to that effect must be made in a motion for new trial. See Tex. R. Civ.
P. 324(b)(2). (4) No such point was raised. 

 Accordingly, the issues of sufficiency to support the jury's verdict have not been preserved
for our review. We do note, however, that at a bare minimum, there was evidence that Roberts was
aware of the existence and publication of the letter at or very near the time of its writing and that it
was thereafter in her personnel file, to which she had access. Roberts testified that she did not know
if the letter was ever in her personnel file and that she never asked to see it. Even though Roberts
presented evidence that she did not know of the letter until after she received a letter from the EEOC
in April 2002, there is both legally and factually sufficient evidence to support the jury's answer. 

 The contention of error is overruled.

Excluding Counseling Record

 Roberts also contends, as a part of her sufficiency claim, that the court "erred when it
overruled the June Counsel." Apparently she is referring to an employee counseling session. In her
argument, she discusses the versions of the evidence about the way the session was handled, and the
testimony about the session in considerable detail. It appears that her actual complaint is that the
court erred by overruling her offer of "the complete June counsel record." 

 Roberts attempted to introduce into evidence the record of the counseling session, and also
several other documents added after the counseling session had occurred. (5) Davis' counsel objected
to documents that were attached to the counseling session notes. Roberts advances that her
responses to the session would demonstrate "silence" on the issue of notice of the letter. The court
then sustained Davis' objection and declined to admit the entirety of the document. Later, the
counseling session notes were introduced, but no offer of proof was made of the other documents
that were excluded by the trial court. Therefore, the contents of such records and relevance to any
issue before this Court cannot be determined. To challenge the exclusion of evidence, a party must: 
(1) attempt to introduce the evidence; (2) if an objection is made, specify the purpose for which the
evidence is offered and give the trial court reasons why the evidence is admissible; (3) obtain a ruling
from the court; and (4) if the court rules the evidence inadmissible, make a record, through an offer
of proof, of the precise evidence the party desires admitted. Tex. R. App. P. 33.2 (providing
procedure to make formal bills of exception); Tex. R. Evid. 103 (detailing effect of an erroneous
evidentiary ruling and requiring an objection and offer of proof for excluded evidence); see Fletcher
v. Minn. Mining & Mfg. Co., 57 S.W.3d 602 (Tex. App.--Houston [1st Dist.] 2001, pet. denied). 
The alleged error has not been preserved. 

 We affirm the judgment.


 Jack Carter

 Justice


Date Submitted: September 4, 2007

Date Decided: November 1, 2007

1. Roberts v. Davis, 160 S.W.3d 256 (Tex. App.--Texarkana 2005, pet. denied).
2. The April 9, 2001, letter accuses Roberts of violations of state and federal law, repetitious
and malicious illegal malpractice, manufacture of false reasons for violating orders, and illegally
practicing medicine. See Roberts, 160 S.W.3d at 262.

3. Since no objection was made to the relevant dates (April 9, 2001 to April 9, 2002), we
express no opinion as to the propriety of those dates. 
4. Although the Texas Rules of Civil Procedure do not require a motion for new trial to
preserve many issues, the rules do require a motion for new trial to preserve factual sufficiency
challenges. See Tex. R. Civ. P. 324(b); Roberson v. Collins, 221 S.W.3d 239, 242 (Tex.
App.--Houston [1st Dist.] 2006, no pet.); Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss, 202
S.W.3d 427, 450 (Tex. App.--Texarkana 2006, no pet.).
5. The record indicates that those documents were a written response prepared by Roberts after
the session and letters from two physicians that Roberts had placed in the file. Those were all dated
after the date of the counseling session.