**Constantino ZARATE, Appellant,**

v.

**Miguel (Mike) P. CORTINAS, Jr., Appellee.**

**No. 1188.**

Court of Civil Appeals of Texas, Corpus Christi.

June 23, 1977.

Raul A. Gonzalez, Gonzalez & Hamilton, Brownsville, for appellant.

George W. Storter, Storter & Pena, Brownsville, for appellee.

## OPINION ON MOTION FOR REHEARING

NYE, Chief Justice.

Our original opinion has been withdrawn and this opinion is substituted therefor.

This is a summary judgment case. Plaintiff Constantino Zarate brought suit for damages against Miguel (Mike) P. Cortinas, Jr. for allegedly slanderous statements made in a complaint filed with the Sheriff's office in Brownsville, Cameron County, Texas. Defendant filed a motion for summary judgment claiming that the alleged slanderous statement was absolutely privileged. After considering both parties' summary judgment evidence, the trial court granted the motion. From this action by the trial court, plaintiff has perfected his appeal to this Court.

The undisputed facts show that the defendant is a County Commissioner of Cameron County, Texas, and the plaintiff is a county employee presently holding the position of Chief Deputy County Clerk. The plaintiff had been employed by Cameron County for approximately 53 years. The controversy arose in 1974 when the plaintiff Constantino Zarate, Carlos Garza, defendant's cousin, and Joe Rivera were vying for the position of County Clerk of Cameron County in the Democratic primary election. The plaintiff was eliminated during the first election. During the run-off election between Joe Rivera and Carlos Garza, the plaintiff Zarate publicly endorsed and worked for the election of Joe Rivera. The defendant County Commissioner Cortinas publicly endorsed and worked for the election of Carlos Garza. Joe Rivera won the election and is presently the County Clerk of Cameron County, Texas. After the election, defendant Cortinas filed a complaint with the Cameron County Sheriff's office which accused the plaintiff of the unauthorized loan of certain county property, to-wit: a hot plate, one extension cord and a fan. The plaintiff brought this suit against Cortinas alleging that the complaint he made to the Cameron County Sheriff's office was false and that such statement was made with malicious intent and that such action on the defendant's part constituted actionable slander. The trial court granted the summary judgment based on the defense of absolute privilege.

Plaintiff's only point of error is that the trial court erred in granting defendant's motion for summary judgment because the summary judgment evidence raised a fact question as to whether or not defendant had malicious intent in the filing of the complaint. The resolution of this point depends (considering that the statement was made and that it was false) on whether or not the communication from defendant Cortinas to the Sheriff's office was absolutely privileged or was qualifiedly privileged. If the privilege was absolute, then the trial court was correct. If the privilege was qualified, then a fact question existed as to whether or not defendant Cortinas made the statement with malice.

▬ Generally, in an action for defamation, a defendant is limited to only two complete defenses: truth and absolute privilege. These defenses avoid all liability when established. Although there are many other defenses that go toward mitigation, none of these are relevant as it concerns the case before us. An absolutely privileged communication is one for which, by reason of the occasion upon which it was made, no remedy exists in a civil action for damages for libel or slander even though the language was false and was uttered or published with express malice. 36 Tex. Jur.2d, Section 60. Privilege rests upon the rule of public policy: that is, the conduct which otherwise would be actionable may escape liability because the defendant is acting in furtherance of some interest of social importance which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation. Absolute privilege has necessarily been extended by general agreement between the courts and the public to judicial, legislative, and executive proceedings and to communications between husband and wife and other situations of similar import. See W. Prosser, Law of Torts § 114 (4th Ed. 1971).

▬ On the other hand, a qualified privilege occurs where the social policy considerations (public policy and interest) are of relatively less weight so that inquiry into the motive and reasonableness behind the statement is permitted. Such communica-

tions are privileged when made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform to another person having a corresponding interest or duty. The privilege is termed conditional or qualified because the person availing himself of the privilege used it in a lawful manner and for a proper purpose. The effect of such privilege is to justify the communication when it was made with proper motives and without actual malice.

■ In Texas, the rule has been established that communications uttered or published in the course of a judicial proceeding are absolutely privileged and this applies to proceedings before executive officers, boards or commissions which exercise quasi-judicial powers. *Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 166 S.W.2d 909 (1942). This is true even though the statement was not relevant or pertinent to the issues involved in the case and was false and uttered with malice. The Supreme Court in the Reagan case said:

".  .  . It is the occasion, not the communication, which creates or furnishes the privilege. The rule is one of public policy. It is founded on the theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual  .  .  ."

However, the Reagan case is distinguishable from the case before us. The communication in the Reagan case was from an insurance company to the insurance commission which is a quasi-judicial body. In the case before us, the record is not clear as to whether or not Cortinas was acting in his official capacity or as a private citizen. Regardless of which capacity he was acting in the communication with the peace officer he did not enjoy an absolute privilege. See *Vogt v. Guidry,* 229 S.W. 656 (Tex.Civ.App. —San Antonio 1921, no writ). A review of other jurisdictions who have studied the question of this type of communication indicates a division of authority. However, the majority of the jurisdictions holds that this type of communication is qualified. See

*Porterfield v. Burger King Corporation,* 540 F.2d 398 (8th Cir. 1976); *S. H. Kress and Company v. Self,* 22 Ariz.App. 230, 526 P.2d 754 (1974); *Bradford v. Mahan,* 219 Kan. 450, 548 P.2d 1223 (1976); *Schafroth v. Baker,* 276 Or. 39, 553 P.2d 1046 (1976); *Lybrand v. The State Co.,* 179 S.C. 208, 184 S.E. 580 (S.C.1936) New Jersey & Maryland hold that such privilege is absolute. See *Picone v. Talbott,* 29 Md.App. 536, 349 A.2d 615 (1975); *Genito v. Rabinowitz,* 93 N.J.Super. 225, 225 A.2d 590 (1966).

■ We are of the opinion that the better reasoned rule is to hold that the communication of alleged wrongful acts to an official authorized to protect the public from such acts is a qualified privilege. We fully recognize that there is a strong public policy consideration that such communications be given some privilege against civil prosecution for defamation. It is obviously vital to our system of criminal justice that citizens be allowed to communicate to peace officers the alleged wrongful acts of others without fear of civil action for honest mistakes. However, we do not feel this privilege should be unbridled. The qualifying criterion for such a privilege is that the statements must be made in good faith and without malice. See: *Denton Publishing Company v. Boyd,* 460 S.W.2d 881 (Tex.Sup. 1970); *Gulf Coast Construction Company v. Mott,* 442 S.W.2d 778 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ); *Cooksey v. McGuire,* 146 S.W.2d 480 (Tex.Civ.App.— Eastland 1941, no writ); *Foley Bros. Dry Goods Co. v. McClain,* 231 S.W. 459 (Tex. Civ.App.—Beaumont 1921, no writ); *Koehler v. Dubose,* 200 S.W. 238 (Tex.Civ.App.— San Antonio 1918, writ ref'd).

The communication involved in this case does not come within the traditional areas of absolutely privileged communications recognized in this State. We see no reason to extend the absolute privilege to this type of communication. To so hold would unnecessarily deny those innocent victims of maliciously or recklessly filed complaints an opportunity to seek remuneration for their injury. We perceive of no benefit to society which necessitates holding such commu-

nications to be absolutely privileged. If one makes this type of a complaint with malice, then he should not be permitted to invoke the defense of privilege but should answer in damages.

■ We hold that if the complaint was in fact made; if such complaint was in fact false; and if Cortinas acted maliciously in filing the complaint against Zarate, then the trier of facts should determine the extent of damages, if any, that the plaintiff suffered. The trial court erred in granting Cortinas' motion for summary judgment. The judgment of the trial court is REVERSED and the cause is REMANDED for trial. REVERSED AND REMANDED.

Appellee's Motion for rehearing is overruled.