Leslie Lee DARRAH and Leslie Lee Darrah, Jr., Appellants,

v.

Caron K. HINDS and Interfirst Bank South Fort Worth, Appellees.

No. 2–86–079–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 26, 1986.

Paul Wendell Enlow, Fort Worth, for appellants.

Cantey, Hanger, Gooch, Munn & Collins, and Perry J. Cockerell, Clifford F. McMaster, Fort Worth, for appellees.

Before HOPKINS, FARRIS and KELTNER, JJ.

## OPINION

KELTNER, Justice.

This is a libel suit seeking money damages against InterFirst Bank South, Fort Worth, and one of its officers. The trial court granted a summary judgment to the Bank, holding that the alleged libelous statements were protected by an absolute privilege.

We affirm.

Suit arises out of statements made in an affidavit in another cause of action in a county court at law. In that case the Bank sought a writ of sequestration on a car and to collect a promissory note against Leslie Lee Darrah, Jr., one of the appellants, in this court. Specifically, the Bank, through its vice-president, filed an affidavit in support of an application for writ of sequestration for the car. In the affidavit, the Bank officer stated:

> I have talked with the father of the Defendant and the father tells me that the Defendant is unstable and frequently carries a shotgun in the car with him and

that the father is afraid of the Defendant.

The writ of sequestration was issued by the County Court at Law judge and law enforcement officials allegedly carried out the order by seizing the car in an "offensive and degrading manner" at Darrah's place of employment. Darrah's father, L.L. Darrah, Sr., also an appellant herein, denies the conversation in the affidavit. Together father and son brought suit for libel, claiming damages for shame, embarrassment, humiliation, mental pain and anguish, loss of future earnings due to severe emotional distress, and injury to their good names and reputations. The younger Darrah also claims that the affidavit was published to the clerks of the Tarrant County courts, judges of the Tarrant County courts, and law enforcement officers in Tarrant County, as well as other counties.

The Bank moved for summary judgment on the sole ground that the statements in the affidavit were made in the course of a judicial proceeding and are entitled to an absolute privilege. No formal reply was filed by the Darrahs in which they raised issues or objected to proof, even though they submitted a brief in opposition to the motion. The trial court granted the motion and entered a take nothing judgment against the Darrahs.

The Darrahs bring three points of error complaining of the trial court's action. First, they claim that only a qualified privilege applies rather than an absolute privilege. Second, they claim the filing of the affidavit does not constitute an action in judicial proceeding; and third, they claim the affidavit was published to third parties before filing by publishing to the notary who notarized the affidavit and other unknown individuals who may have seen the affidavit.

We overrule each point of error and affirm the judgment of the trial court.

■ It is well settled that communications in the course of judicial proceedings are absolutely privileged and cannot serve as the basis of defamation actions, regardless of the negligence or the malice with which they are made. *James v. Brown,* 637 S.W.2d 914, 916 (Tex.1982); *Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 166 S.W.2d 909 (1942). This absolute privilege is a rule of non-liability and applies even though the statements are not relevant, pertinent or material to the issues involved in the case in which they were uttered. *Id.* 166 S.W.2d at 912. In recent years, the rule has been extended to communications made in contemplation of judicial proceedings. *Steck v. Sakowitz,* 659 S.W.2d 91, 93 (Tex.App.—Houston [14th Dist.] 1983, *rev'd on other grounds,* 669 S.W.2d 105 (Tex.1984).

The doctrine of absolute privilege is founded on public policy grounds. Obviously, the proper administration of justice requires full disclosure from witnesses without fear of retalitory lawsuits for defamation of any sort. *James v. Brown,* 637 S.W.2d at at 917. As a result, the courts have adopted a doctrine of non-liability for statements made in the due course of judicial proceedings.

■ Outside of judicial proceedings, several qualified privileges exist under certain circumstances. One is relevant to our discussion in this case. When a communication of an alleged wrongful act is made to an official authorized to protect the public from such act, that communication is entitled to a qualified privilege. A good example is a citizen reporting a crime to police authorities. *Zarate v. Cortinas,* 553 S.W.2d 652, 654 (Tex.Civ.App.—Corpus Christi 1977, no writ). A qualified privilege is not absolute and shields the communicator only if he or she acts in good faith and without malice. If the communicator acts negligently or with malice, there is no privilege to a suit for defamation. *Id.* at 654–55.

Here, the allegedly offensive statements were made in an affidavit that was filed in the County Court at Law in connection with an application for writ of sequestration. The Darrahs claim that the mere filing of an affidavit does not constitute a judicial proceeding. We disagree.

At the outset, it must be noted that the affidavit was not only filed, but acted on by the County Court at Law judge in granting the writ of sequestration. In fact, much of the damage alleged by the Darrahs arose out of the execution of the writ of sequestration. The Supreme Court of Texas has held that statements made in "pretrial hearings, affidavits and pleadings" and "other papers" in a case are protected by an absolute privilege as well as statements made in open court. *James v. Brown*, 637 S.W.2d at 916–17. As a result, the filing of an affidavit in connection with seeking a writ of sequestration is an action taken in the course of a judicial proceeding and is entitled to an absolute privilege against a civil action for defamation.

The Darrahs claim that the statements are not absolutely privileged; but, instead, claim that they enjoy only a qualified privilege. In support of this argument, the Darrahs cite three cases. *Vista Chevrolet v. Barron*, 698 S.W.2d 435 (Tex.Civ.App.—Corpus Christi 1985, no writ); *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624 (Tex. Civ.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); and *Zarate*, 553 S.W.2d at 655. Each of these cases involves a complaint of criminal conduct made to an official authorized to protect the public from such conduct. In those cases, the Corpus Christi

and Houston Courts of Appeals held that only a qualified privilege applies and that a cause of action for defamation exists if the statement was not made in good faith or was made with malice. Additionally, the Courts of Appeals in those cases distinguished those fact situations (criminal complaints) from actual communications made in the course of a judicial proceeding. *Vista Chevrolet v. Barron*, 698 S.W.2d at 436;[1] *Marathon Oil Co. v. Salazar*, 682 S.W.2d at 630–31;[2] *Zarate v. Cortinas*, 553 S.W.2d at 655.[3]

The statements made in this case were made in the course of a judicial proceeding and as a result, are absolutely privileged. The Texas Supreme Court has laid out an all encompassing rule to govern these fact situations:

> This privilege (absolute privilege) extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case.

*James v. Brown*, 637 S.W.2d at 916–17.

 It is clear that the statements made in the instant case were made in a pre-trial proceeding and an affidavit. These state-

---

**1.** The *Vista Chevrolet* case was a slander case in which the car dealership reported to the police that the defendant had stolen one of its cars. The Corpus Christi court acknowledged that the report of a crime is not the same as a communication in a judicial proceeding as in the landmark case of *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d at 909. *Vista Chevrolet v. Barron*, 698 S.W.2d at 435–36.

**2.** The *Marathon Oil* case was a malicious prosecution, libel and slander case in which the company swore out a criminal complaint in justice of the peace court against an employee, claiming he stole a piece of equipment. The Houston Court (1st Dist.) noted that while an absolute privilege was pled by Marathon, that it did not object to the submission to the court's charge on that ground. As a result, the Marathon holding does not involve absolute privilege, but does hold that an absolute privilege would apply to statements the cause of a judicial proceeding. Since Marathon dealt with the report of criminal activity to the authority, a qualified privilege

was applied. *Marathon Oil Co. v. Salazar*, 682 S.W.2d at 624–31.

**3.** The *Zarate* case was a slander case wherein a County Commissioner allegedly filed a complaint with the Sheriff's office accusing the defendant, a Deputy County Clerk, of an unauthorized loan of county property. Immediately before the complaint was filed, the defendant was involved in a political race against the County Commissioner's cousin. The Corpus Christi court was asked to determine whether an absolute or qualified privilege applied. The court ruled that while an absolute privilege applies during judicial proceedings, only a qualified privilege applies when "accusation of alleged wrongful acts to an official authorized to protect the public from such acts...." *Zarate v. Cortinas*, 553 S.W.2d at 652–55. Specifically, the court distinguished the absolute privilege in judicial proceedings found in the *Reagan* case from communications to a peace officer of alleged illegal conduct. *Zarate v. Cortinas*, 553 S.W.2d at 652–55.

ments were also made with the intention that the court act upon them. As a result, they enjoy an absolute privilege and cannot serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they were allegedly made. This does not mean that the younger Darrah was without a remedy. He was entitled to file a motion to dissolve the writ of sequestration and for damages in the County Court. TEX.CIV.PRAC. & REM. CODE ANN. secs. 62.043–62.045 (Vernon 1985). Our record on appeal does not reflect whether the younger Darrah availed himself of that remedy. However, all counsel candidly admit that he did not.

In the last point of error, the Darrahs claim a multitude of errors. They claim that the affidavit was filed before the original petition and as a result the affidavit was not made in the due course of a judicial proceeding. Second, they claim that the statements in the affidavit were published to third parties, including the notary public before whom it was signed and unknown third parties who may have seen the affidavit before it was filed with the clerk's office. Third, they claim that the case should be remanded to allow discovery on the identity of the third parties to whom the statements were allegedly published.

At the outset, none of these matters were raised in a written objection to the Bank's motion for summary judgment. As a result, these challenges cannot be heard for the first time on appeal. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979); TEX.R.CIV.P. 166(c). However, even if we were to review these allegations, they would not require a reversal.

■ The only allegation in the Darrah's petition regarding publication states that individuals saw the affidavit "on the date and since the filing of said affidavit in the Tarrant County Courthouse...." As a result, we must eliminate any other people who "could have seen" the affidavit prior to its filing based on the plaintiff's own pleading. Even if this were not the case, the Darrahs could have moved for a continuance to conduct discovery into the identity of those people to whom the affidavit was published. This step was not taken.

■ Next, the Darrahs contend that the statements in the affidavit were published to other third persons, including the office staff of the defendants and the notary public who attested the affidavit. It should be noted that the notary public for the affidavit was Clifford McMaster, who was also the attorney of record for the Bank. While we do not condone lawyers attesting the signatures of their clients, it is clear that there was no publication of the statements to third parties by publication to the Bank's lawyer or the Bank's lawyer's staff. To hold otherwise would completely eliminate the absolute privilege mandated by the Supreme Court, as the preparation of legal documents and affidavits must be done by people other than parties in the lawsuit.

■ Finally, the Darrahs argue that the affidavit and writ of sequestration were actually filed before the plaintiff's original petition in the County Court at Law suit. That petition was filed on October 11, 1985, at 2:53 p.m. The affidavit was filed at 2:52 p.m. on October 11, 1985. We note that it is the usual practice of the Tarrant County District Clerk's office to file-stamp all documents individually, even if such documents are presented for filing contemporaneously. It is likely that the affidavit and the petition were submitted at the same time for filing in a new proceeding. It is important to note that the affidavit supports allegations in the petition. Nonetheless, the passage of as much as sixty seconds has no relevance here. Texas law is settled that documents prepared in contemplation for litigation are also privileged. *James v. Brown*, 637 S.W.2d at 917; *Steck v. Sakowitz*, 659 S.W.2d at 93; THE RESTATEMENT (SECOND) OF TORTS sec. 588 (1981).

The summary judgment in favor of the Bank and its employee is affirmed.