COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-126-CV

 

 

CENTRAL
AMERICAN AVIATION                                            APPELLANT

SERVICES,
S. A.

                                                   V.

 

BELL HELICOPTER TEXTRON, INC.                                            APPELLEE

 

                                              ------------

 

            FROM
THE 96TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Central American
Aviation Services, S.A. appeals the trial court=s summary judgment on its claims of defamation per se and tortious
interference with prospective contractual relationships.  We affirm.

 

 








BACKGROUND

Appellant is a helicopter
service facility.  Appellee manufactures
helicopters and has a network of more than 150 independently‑owned,
authorized Customer Service Facilities (ACSFs@)
worldwide.  One benefit associated with
Appellee=s CSF designation is a full-page advertisement in Appellee=s official Customer Support and Services Directory (ADirectory@).  In 2002, Appellant submitted its CSF
application to Appellee.  Appellee
included Appellant in the 2003 Directory as a CSF before Appellant=s CSF application was approved. 
Appellee ultimately declined Appellant=s CSF application.[2]

On August 22, 2003, Appellee
sent out the following letter (ALetter 1@), addressed
ATo Whom it May Concern@:[3]

It
has been brought to [Appellee=s] attention that [Appellant]
has been promoting itself as a legally appointed [CSF].  This is not an accurate statement.  [Appellant] is not a [CSF].

 

[Appellee]
published a directory with a printing error, which included [Appellant] as a
certified CSF.  Again, this was a
printing error and in no way implies that [Appellant] is a certified [CSF].

 

The only certified and legally
appointed CSF in Central America is Aeroservicios AVE (AVESA) in Guatemala.








On February 18, 2004, the same letter (ALetter 2@) was
addressed, and presumably sent,[4]
to Comandante Julio César Santamarina Montabán of the Guatemalan air
force.  A[Appellant] has been promoting itself as a legally appointed [CSF]@ is the statement at issue in both letters.

Both parties= exhibits contained a letter from a company in Guatemala, (AVolar letter@) dated
March 5, 2004, and addressed to Danny Maldonado, Appellee=s executive director of Latin American Sales.  Translated from Spanish,[5]
it reads as follows:

In response to your question,
I hereby confirm our commercial relationship with [Appellant] in Guatemala on
the year 2002 and 2003, whom at a given moment expressed to be Authorized
Representatives of [Appellee], documenting their representation with the
[Directory] published by you all, reason for which we decided to hire certain
services directly with [Appellant].








Appellant sued Appellee for Anot less than $88,000,000.00@ in damages based on service contracts and bids for future services
contracts, which it claimed it lost as a result of Appellee=s letters.  Appellee moved for
summary judgment, raising a defense of qualified privilege to both of Appellant=s claims, A[e]ven if
one assumes that the statements made by [Appellee] are defamatory and factually
false,@ and claiming that the evidence established that it acted without
actual malice.  Among the attachments to
its motion, Appellee included Appellant=s response to its request for admission number four: A[Appellee] had an interest in ensuing [sic] that the public has
accurate information regarding the identities of authorized Bell [CSFs].@  Appellant=s response: AAdmit.@

Trial Court=s Judgment

The trial court issued a
letter judgment on February 17, 2006, stating, AFollowing our hearing of February 16, 2006, I reviewed [Appellant=s] summary judgment evidence and found no evidence of actual
malice.  That being the case, I find for
[Appellee] and grant its motion for summary judgment.@ However, in its March 15, 2006 final summary judgment order, the
trial court did not state the basis for the summary judgment, other than that
it granted Appellee=s motion as
to all of Appellant=s claims A[a]fter considering the pleadings, the papers on file, the evidence,
and the arguments made by the parties.@  It ordered that Appellant take
nothing on its claims and dismissed Appellant=s claims with prejudice.

SUMMARY JUDGMENT








In two issues, Appellant
asserts that the trial court should not have granted summary judgment on its
claims of defamation per se and tortious interference with prospective
contracts because it met its burden in establishing those claims and presented
evidence creating material fact issues as to both. Appellant also argues that
Appellee failed to meet the elements necessary to assert a qualified privilege
to defeat Appellant=s claims.

Standard Of Review

In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.

When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).








The summary judgment will be affirmed only if the
record establishes that the movant has conclusively proved all essential
elements of the movant=s defense as
a matter of law.  Clear Creek Basin,
589 S.W.2d at 678.  When, as here, the
trial court does not specify the grounds upon which a summary judgment was
granted, we affirm the summary judgment if any of the theories presented to the
trial court and preserved for appellate review are meritorious.  Cincinnati Life Ins. Co. v. Cates, 927
S.W.2d 623, 626 (Tex. 1996); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.
1989).

A defendant is entitled to
summary judgment on an affirmative defense if the defendant conclusively proves
all the elements of the affirmative defense. 
Rhone‑Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex.
1999); see Tex. R. Civ. P.
166a(b), (c).  To accomplish this, the
defendant‑movant must present summary judgment evidence that establishes
each element of the affirmative defense as a matter of law.  Ryland Group, Inc. v. Hood, 924 S.W.2d
120, 121 (Tex. 1996).

Preservation Of Error








Appellee complains of
Appellant=s exhibits
4, 6, 7, 8, and 9, arguing that although they were attached to an affidavit,
the affidavit did not authenticate them. 
Appellant complains that Maldonado=s affidavit should not be considered, on an Ainterested witness@ theory raised with the trial court in footnote six of its response in
opposition to Appellee=s motion for
summary judgment.  Maldonado=s affidavit was attached to Appellee=s motion to support its claim that it acted in good faith to protect
its customers by sending out the letters.

To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling,
if they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a); see also Tex. R. Evid. 103(a)(1).  If a party fails to do this, error is not
preserved, and the complaint is waived.  Bushell
v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh=g).  The objecting party must
get a ruling from the trial court.  This
ruling can be either express or implied. 
Frazier v. Yu, 987 S.W.2d 607, 610 (Tex. App.CFort Worth 1999, pet. denied). 
If trial judge refuses to rule, an objection to the refusal to rule is
sufficient to preserve error.  Tex. R. App. P. 33.1(a)(2).








Objections to a lack of
verification and authentication are defects of form.  Wrenn v. G.A.T.X. Logistics, Inc., 73
S.W.3d 489, 498 (Tex. App.CFort Worth 2002, no pet.).  As
such, Appellee was required to raise its objections and obtain rulings in the
trial court to be able to assert its complaints in this court.  Id. 
The trial court did not rule on these objections.  Therefore, these objections were not
preserved.  See id.  An affidavit of an interested witness also
presents a defect of form.  See
Ahumada v. Dow Chem. Co., 992 S.W.2d 555, 562 (Tex. App.CHouston [14th Dist.] 1999, pet. denied).  Because the trial court did not rule on
Appellant=s objection
to Maldonado=s affidavit,
this objection was also not preserved.[6]  Id.

Appellant=s Prima Facie Claims 








To establish its defamation
claim, Appellant had the burden to show that Appellee (1) published a statement
(2) that was defamatory concerning Appellant (3) while acting at least
negligently with regard to the truth of the statement.  WFAA‑TV, Inc. v. McLemore, 978
S.W.2d 568, 571 (Tex. 1998), cert. denied, 526 U.S. 1051 (1999).  To establish its tortious interference with
prospective contracts claim, Appellant had the burden to show that (1) there
was a reasonable probability that the parties would have entered into a
contractual relationship, (2) Appellee committed an independently tortious or
unlawful act that prevented the relationship from occurring, (3) Appellee did
such act with a conscious desire to prevent the relationship from occurring or
knew that the interference was certain or substantially certain to occur as a
result of his conduct, and (4) Appellant suffered actual harm or damage as a
result of Appellee=s
interference.  See Brown v. Swett
& Crawford of Tex., Inc., 178 S.W.3d 373, 381‑82 (Tex. App.CHouston [1st Dist.] 2005, no pet.).

To satisfy its tortious
interference claim, Appellant had to prove its defamation claim, the Aindependently tortious or unlawful act.@  Id.  And if Appellant met its initial burden on
the defamation claim, summary judgment was still appropriate if Appellee
satisfied its qualified privilege affirmative defense.  See Rhone‑Poulenc, Inc., 997
S.W.2d at 223.  In its February 17, 2006
letter judgment granting Appellee summary judgment for the reason that there
was Ano evidence of actual malice@ to destroy the privilege, the trial court impliedly found that
Appellant met its defamation and tortious interference claims and that Appellee
met its qualified privilege affirmative defense. Assuming, but not deciding,
that Appellant met its initial burden, we review whether Appellee proved the
elements of qualified privilege.

Qualified Privilege








A qualified privilege may
apply to defamatory statements if the statements were made in good faith and
without malice, on a subject in which the maker has an interest or duty, to
another person having a corresponding interest or duty.  See Dixon v. Sw. Bell Tel. Co. 607
S.W.2d 240, 242 (Tex. 1980); see also Roberts v. Davis, 160 S.W.3d 256,
263 (Tex. App.CTexarkana
2005, pet. denied).  To claim the
privilege, Appellee also had to demonstrate that the statement was limited to
its proper scope, occasion, manner of publication, and parties.  Roberts, 160 S.W.3d at 263.  Whether a privilege exists is a question of law
for the court.  See Gray v. HEB Food
Store No. 4, 941 S.W.2d 327, 330 (Tex. App.CCorpus Christi 1997, writ denied). 
Because Appellee moved for summary judgment on the basis of qualified
privilege, it had the burden to conclusively establish its affirmative
defense.  See Roberts, 160 S.W.3d
at 263; Gray, 941 S.W.2d at 330.

Appellant argues that
Appellee=s statements were not entitled to protection by qualified privilege
because Appellee failed to establish (1) that it acted in good faith in issuing
the letters and (2) that dissemination of the publication was limited to the
proper parties.

Proper Parties








Appellant claims that
Appellee did not limit the dissemination of the allegedly defamatory statements
because Appellee sent its letters to all parties who, according to Appellant,
Appellee Aconceivably
believed may have been misledCincluding those parties whose misunderstanding was solely
caused by [Appellee=s] inclusion
of [Appellant] in its 2003 Directory and parties who were previously oblivious
to the situation.@








A qualified or conditional
privilege has been recognized when a public or private interest in the
availability of correct information is of sufficient importance to require
protection of honest communication of misinformation.  See Pioneer Concrete of Tex., Inc. v.
Allen, 858 S.W.2d 47, 50 (Tex. App.CHouston [14th Dist.] 1993, writ denied).  It remains intact as long as the
communication passes only to persons having an interest in the matter to which
the communication relates.  See
Richard Rosen, Inc. v. Mendivil, No. 08‑04‑00077‑CV, 2005
WL 3118005, at *11-*12 (Tex. App.CEl Paso Nov. 23, 2005, pet. denied) (holding that communication of
defamatory statement without any business reason to do so was sufficient to
defeat former employer=s qualified
privilege claim); see also Ortiz v. San Antonio City Employees Fed. Credit Union,
974 S.W.2d 833, 837 (Tex. App.CSan Antonio 1998, no pet.) (holding that qualified privilege applied
when company had a contractual obligation to its subscribers to inform them and
also because those subscribers had an interest to ensure that appropriate
action would be taken on behalf of their own customers).  Communications that pass beyond those with an
interest in the subject matter are not privileged.  See Henriquez v. Cemex Mgmt., Inc. 177
S.W.3d 241, 253 (Tex. App.CHouston [1st Dist.] 2005, pet. denied) (holding that privilege applied
when plaintiff agreed in deposition testimony that all persons present at the
meetings in which the defamatory statements were made had a right to
participate in the investigation of the wrongful conduct allegations).  Therefore, whether Appellee issued its
letters to the proper parties depends on whether the parties to whom the
letters were sent shared an interest with Appellee in the information contained
within the letters.  See Allen,
858 S.W.2d at 50.

Here, Appellee attached to
its summary judgment motion a copy of Appellant=s response to Appellee=s request for admissions number four. 
In this response, Appellant admitted that Appellee had an interest in
ensuring that the public had accurate information regarding the identities of
authorized CSFs.  A matter admitted under
rule 198.3 Ais
conclusively established as to the party making the admission.@  See Tex. R. Civ. P. 198.3.  Therefore, for the privilege to apply, the
parties to whom the statements, A[Appellant] has been promoting itself as a legally appointed [CSF]@ and that Appellant was not in fact a CSF, were communicated had to
share Appellee=s interest
in accurate information, and in preventing misrepresentations, with regard to
the identities of authorized CSFs.  See
Allen, 858 S.W.2d at 50.








To substantiate its claim,
Appellee attached to its summary judgment motion the Volar letter, which
indicated that Appellant had misrepresented itself to Volar as a CSF using the
Directory, and the affidavit of Maldonado, whose signature appears on both
Letters 1 and 2.  Maldonado=s affidavit stated that the letters were sent A[i]n an effort to correct the confusion caused by the error in the
directory and to ensure that [Appellee=s] customers had accurate information regarding [Appellant=s] status,@ because
Appellee had Areceived
reports that [Appellant] had represented itself as a Bell CSF to various third
parties.@  Because of alleged
misrepresentations to Appellee=s customers regarding Appellant=s status, then, Appellant=s correct status would be a Aprivate interest in the availability of correct information,@ shared by Appellee and its customers. 
See id.

Because Appellant does not
claim that Appellee sent the letters to the public, which Appellant admitted
Appellee had an interest in informing as to correct CSF identities, but rather
to all parties who Appellee Aconceivably believed may have been misled,@ that is, parties with an interest in the proper identity of Appellee=s CSFs and in not being subjected to possible misrepresentations,[7]
we conclude that Appellee met its burden with regard to the proper parties of
its qualified privilege claim.  See id;
Henriquez, 177 S.W.3d at 253; Roberts, 160 S.W.3d at 263.








 

Good Faith & Actual Malice

When publication of a
defamatory statement is made under circumstances creating a qualified
privilege, the plaintiff has the burden to prove malice or the want of good
faith, but when the defendant moves for summary judgment, the defendant has the
burden of proving absence of malice.  See
Martin v. Sw. Elec. Power Co., 860 S.W.2d 197, 199 (Tex. App.CTexarkana 1993, writ denied). 
That is, the law generally presumes good faith and want of malice when a
statement is made under circumstances giving rise to a qualified
privilege.  See Free v. Am. Home
Assur. Co., 902 S.W.2d 51, 55 (Tex. App.CHouston [1st Dist.] 1995, no writ). 
That privilege is lost, however, if the statement was in any degree
actuated by malice.  Id.  Therefore, because Appellee was the movant,
it had the burden to prove the absence of malice.  See id.








A showing of good faith and
the absence of malice requires an inquiry into the motive and reasonableness
behind the statements, as well as the speaker=s knowledge of falsity of the statements.  See Zarate v. Cortinas, 553 S.W.2d
652, 654-55 (Tex. Civ. App.CCorpus Christi 1977, no writ).  AGood faith@ is a state
of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one=s duty or obligation, (3) observance of reasonable commercial
standards of fair dealing in a given trade or business, or (4) absence of
intent to defraud or to seek unconscionable advantage.  Black=s Law Dictionary 713 (8th ed. 2004).  Because there are no allegations or evidence
presented requiring a review of commercial standards or suggesting Appellee had
an intent to defraud Appellant, we will apply only the first two definitions of
Agood faith.@

To defeat a qualified
privilege, the statements at issue must have been  actuated, inspired, or colored by actual
malice existing at the time of publication or by some evil motive or bad faith.  E. Tex. Med. Ctr. Cancer Inst. v.
Anderson, 991 S.W.2d 55, 60 (Tex. App.CTyler 1998, pet. denied). 
Malice sufficient to overcome a qualified privilege in a defamation
action requires a showing that the defendant acted with knowledge or in
reckless disregard of the falsity of the publicized matter, that is, that it
entertained serious doubts about the truth of the statement.  See Gray, 941 S.W.2d at 330.  Only if Appellee put forth sufficient proof
that it acted in good faith and without actual malice did the burden shift to
Appellant to put forth controverting evidence to create a material fact issue.








Appellee attached copies of
Letters 1 and 2 to its summary judgment motion. 
The apparent intent behind both letters was to inform Appellee=s customers and to put them on notice that Appellant was not a CSF.[8]  Appellee attached the Volar letter to its
motion to support its belief that Appellant had promoted itself as a CSF using
Appellee=s Directory.  Altogether, the
Volar letter, Maldonado=s affidavit,
and Letters 1 and 2 provide Appellee with a good faith basis for making the
statement to its customers that A[i]t has been brought to [Appellee=s] attention that [Appellant] has been promoting itself as a legally
appointed [CSF].@  Maldonado states in his affidavit that A[Appellee] had no reason to believe that the statements contained
within the letters were false.@  Therefore, initially, Appellee
met its burden of demonstrating that it acted in good faith and without actual
malice.

Appellant=s Evidence 








Appellant counters that
Appellee did act with actual malice, arguing that Appellee=s conduct demonstrated either a reckless disregard for the truth, or
that it acted with actual knowledge of the falsity of its statements.  A plaintiff can bar summary judgment by
presenting evidence that creates a fact question on at least one element of each
affirmative defense advanced by the defendant. 
See Hanssen v. Our Redeemer Lutheran Church, 938 S.W.2d 85, 90
(Tex. App.CDallas 1996,
writ denied).  Here, Appellant attempts
to meet that burden by presenting, as evidence to demonstrate that Appellee acted
with actual malice, Appellee=s reference in Maldonado=s affidavit to Areports@ from third parties when it only attached a single letter, the Volar
letter, in support of this fact; the date on the Volar letter; Appellee=s Aprinting
error@; Appellee=s verb
choices in Letters 1 and 2 to its customers versus its cease and desist letter
to Appellee; and Appellee=s
distribution of Letter 2 after Appellant contested the assertions in Letter 1.

Volar Letter

Maldonado=s affidavit does make reference to Appellee receiving Areports.@  It states,

Shortly
after the publication of the directory, [Appellee] received reports that the
error in the directory resulted in a great deal of confusion over whether
[Appellant] was indeed a [CSF], and [Appellee] received reports that
[Appellant] had represented itself as a [CSF] to various third parties.

 

This
fact was ultimately verified in writing by a letter from a company in Guatemala
stating that in 2002-2003, [Appellant] had represented itself as an authorized
representative of [Appellee] and documented this claim by presenting the
erroneous 2003 [Directory].

 








Appellee attached a copy of the Volar letter to
its summary judgment motion. Because the affidavit does not specify whether the
reports Appellee received were oral or written, but only that the fact of the
reports were made and Aultimately
verified@ by the Volar letter, the absence of additional written reports is
insufficient to demonstrate that Appellee acted with a reckless disregard to
the alleged falsity of its statement that Appellant had been promoting itself
as a CSF, or that Appellee entertained serious doubts about that statement=s truth.  See Gray, 941
S.W.2d at 330.








Appellant argues that the
timing of the Volar letter demonstrates that Appellee acted without good faith,
in that Letter 1 is dated August 22, 2003, Letter 2 is dated February 18, 2004,
and the Volar letter is dated March 5, 2004. 
It asserts that the Volar letter refers to a Acommercial relationship@ with Appellant that began in 2002 and Astates that the client entered into a working relationship with
[Appellant] prior to the alleged misrepresentations,@ thereby negating the letter=s evidentiary value.  However, a
plain reading of the Volar letter merely confirms, in response to a question
posed by Maldonado to Ramon Zaghi at some earlier time, that Volar did business
with Appellant Aon the year
2002 and 2003A in reliance
on Appellant=s
representation using the Directory. Appellant presented no evidence of the
actual release date of the 2003 Directory to contradict this statement.  Because there is no evidence presented of
when Maldonado originally spoke with Zaghi, that is, whether he spoke with
Zaghi before or after Appellee issued Letters 1 and 2, Appellant=s assertion is insufficient to demonstrate that Appellee acted with a
reckless disregard to the alleged falsity of its statements in Letters 1 and 2,
or that Appellee entertained serious doubts about the statements= truth.  See id.

APrinting
Error@ 

Appellant takes issue with
Appellee=s claim in its motion for summary judgment that Appellant=s inclusion in the Directory was a result of a Aprinting error.@[9]  Appellant attached evidence to
its response in opposition to Appellee=s motion for summary judgment that on October 22, 2002, while its CSF
application was pending, Appellee issued the following faxed letter to
Appellant:

[Appellee]
is now assembling data in preparation to publish the [Directory] for A2003.@  Your participation and contribution is a very
important element to its success.

 

In
order to print the most current data, we ask that the enclosed copied
page containing the information pertinent to your company be reviewed and
updated and returned by fax no later than November 15, 2002.

 

Please
fax the revised page to fax (817) 280-6151. 
If further information is required please contact the undersigned.  Your prompt attention and reply is
appreciated.

 








The document was unsigned, but listed Koichi
Honda, Manager, Customer Support Administration, at its foot, and its header
listed Appellee=s mailing
address.

In an e-mail to Honda, dated
February 17, 2003, Trevor Moore, Appellant=s vice president, asked, AI see in the 2003 [Directory], that [Appellant] is listed as
approved.  My only question based on this
book, do we legally have the right to advertise as such.@[10]  Honda responded, the same day,
with ALegally not as [Appellant] does not have the certificate and agreement
signed at this moment.  It=s already in the book as we were hoping you were going to be approved
during 2003.@[11]













An e-mail dated March 3,
2003, from James P. Tripp, Appellee=s Latin America Sales Manager, Integrated Support Solutions, to Moore
and Honda referenced some problems that Appellee had heard that Appellant was
having with its repair station in Guatemala and indicated that Appellee was
going to hold on to Appellant=s CSF application until that facility could be verified.[12]  This email was followed by one from Appellant=s president, on June 20, 2003, to Honda, announcing that Appellant had
moved into its new facility and requesting his final inspection.  Appellee issued Letter 1 on August 22,
2003.         Although
based on Appellant=s evidence,
the Aprinting error@ actually
does appear to be Appellee=s mistake in listing Appellant as a CSF before it had actually
been approved, this has no bearing on Appellee=s state of mind in making the alleged defamatory statement at issue
here: AIt has been brought to [Appellee=s] attention that [Appellant] has been promoting itself as a legally
appointed [CSF].@  Although Appellee=s use of Aprinting
error@ might tend to indicate an aversion to Appellee=s acknowledging its own mistake in including Appellant in the
Directory before Appellant had been approved as a CSF, it does not show that
Appellee acted with knowledge or serious doubt about whether Appellant had or
had not taken advantage of Appellee=s mistake to misrepresent itself to third parties by using the
Directory.  See id. 

Word Choice

Appellant attached a copy of
a letter dated August 26, 2003 from Appellee=s general counsel to Appellant, which stated

It
has come to our attention that [Appellant] may have promoted itself as being a
duly appointed [CSF] of [Appellee].  We
understand that [Appellant] may have used [Appellee=s
2003 Directory], which lists [Appellant] as a CSF, as proof of [Appellant=s]
relationship with [Appellee]. 

 

As
you know, [Appellant] is not now, nor has it ever been a [CSF]. The 2003
directory entry listing [Appellant] as a CSF is a mistake. Any attempt by
[Appellant] to represent itself as a [CSF] is a misrepresentation of the facts.

 








[Appellee]
must insist that [Appellant] cease and desist any representation to any party
that [Appellant] is a [CSF].  [Appellee]
considers its network of CSFs to be a valuable part of [the] relationship
between [Appellee] and its customers. 
Accordingly, [Appellee] will take any legal steps necessary to protect
this network against misrepresentation.

 

Appellant asserts that the
language differences between the statement in Letters 1 and 2, stating that AIt has been brought to [Appellee=s] attention that [Appellant] has been promoting itself,@ and Appellee=s cease and
desist letter to Appellant dated four days after Letter 1, which stated, AIt has come to our attention that [Appellant] may have promoted
itself as being a duly appointed [CSF] of [Appellee],@ are  evidence of at least a
reckless disregard for the truth. [Emphasis added.]








Letters 1 and 2 were signed
by Appellee=s executive
director for Integrated Support Solutions and Maldonado.  Appellee=s cease and desist letter was not signed by these executive directors,
but rather, by Appellee=s general
counsel.  On its face, the use of Amay@ in Appellee=s general counsel=s letter is representative more of the language of legal professionals
than an indication of doubt, when taken in the context of the Acease and desist@ language
that followed.  Cf. Forbes Inc. v.
Granada Biosciences, Inc., 124 S.W.3d 167, 174 (Tex. 2003) (indicating that
a media defendant=s poor
choice of words or content, without more, does not amount to actual
malice).  The different authors and their
subjective verb choices do not demonstrate that either had knowledge or acted
with reckless disregard of the alleged falsity of the statements in Letters 1
or 2, or an entertainment of serious doubts as to the truth thereof.  See Gray, 941 S.W.2d at 330.  We conclude that the differences in word
choice alone, when made by different writers, is insufficient to show actual
malice.

Letter 2

In Exhibit 8, Appellant
provided a copy of a letter it addressed to Appellee=s general counsel, dated August 27, 2003, in which it claimed that it
had not been misrepresenting itself as a CSF. 
Appellee issued Letter 2 on February 18, 2004.  Appellant argues that Letter 2, because it
was issued several months after Appellant responded to Appellee=s allegedly defamatory statement, is evidence of actual malice.  However, although Appellant strongly denied
that it had misrepresented itself in its response to Appellee=s cease and desist letter, the trial court did not erroneously grant
Appellee=s motion for summary judgment because there was a complete absence of
evidence to show that Appellee acted other than in good faith in sending
Letters 1 and 2.  That is, other than
Appellee=s knowledge that it had made a mistake in listing Appellant as a CSF
when it had not been approved, there was nothing in Letters 1 and 2 to indicate
that Appellee was acting other than in response to at least one report,
memorialized in the Volar letter, that Appellant had taken advantage of the
erroneous directory.








Malice exists when the
evidence shows that the speaker at least entertained serious doubts as to the
truth of his statements, and cannot be inferred from the character of the
allegedly defamatory statement without other evidence to prove it.  See Hanssen, 938 S.W.2d at 93.  Taking all of Appellant=s evidence as true and indulging every reasonable inference, there is
no indication that Appellee entertained serious doubts as to the truth of the
alleged defamatory statements in Letters 1 and 2.  Id.; see Valence Operating Co.,
164 S.W.3d at 661.  Letters 1 and 2 were
responsive to Appellant=s alleged
act of misrepresentation.  The collection
of e-mails that show the interactions between Appellee and Appellant with
regard to Appellant=s CSF
application and the Directory listing do not demonstrate that Appellee actually
believed or had serious doubts that Appellant did not misrepresent itself using
the Directory.  See Gray, 941
S.W.2d at 330.  Because Appellant
presented no evidence of actual malice sufficient to defeat Appellee=s claim to qualified privilege, we overrule Appellant=s first issue.

Appellee met the requirements
of qualified privilege with regard to Appellant=s defamation per se claim. 
Without this independent tort, Appellant had no cause of action for
tortious interference with prospective contractual relations.  See Brown, 178 S.W.3d at 381‑82.  Therefore, we overrule Appellant=s second issue.








CONCLUSION

Having overruled both of
Appellant=s issues, we
affirm the trial court=s judgment.

 

DIXON W. HOLMAN

JUSTICE

 

 

PANEL
B:  LIVINGSTON, DAUPHINOT, and HOLMAN,
JJ.

 

DELIVERED:  March 1, 2007











[1]See Tex.
R. App. P. 47.4.





[2]There is no evidence of when
Appellee declined Appellant=s CSF application.





[3]There is no evidence of how many
parties received Letter 1.





[4]No evidence was presented that any
of these letters had actually been sent. 
However, because no party raises that issue, we will not address it.





[5]The letter was translated by a
professional English/Spanish translator and interpreter, certified and licensed
by the Texas Department of Licensing and Regulation.





[6]In Residential Dynamics, LLC v.
Loveless, a no-evidence summary judgment case, we held that the trial court
implicitly overruled the movant=s objections to the nonmovant=s affidavit when it granted summary
judgment.  186 S.W.3d 192, 195 (Tex. App.CFort Worth 2006, no pet.).  However, in Loveless, the only
evidence presented was the nonmovant=s affidavit.  Id.  We concluded that the movant=s objections to the affidavit were
overruled when its motion was granted.  Id.  Here, in contrast, Appellee presented a
traditional motion for summary judgment and both parties presented evidence
and  objections to each other=s affidavits.  Therefore, unlike Loveless, with its
single affidavit in response to a no-evidence motion, there is no basis, absent
an explicit ruling on the record, to conclude whether the trial court sustained
or overruled these objections. 





[7]Appellant states in its brief that
Appellee distributed Letter 1 Ato an undisclosed number of customers and clients.@ [Emphasis added.]





[8]Maldonado states in his affidavit
that Appellee wrote the letters Ain a good faith attempt to clarify [Appellant=s] truthful status in light of the
confusion that existed as a result of the erroneous directory and the
misinformation [Appellee] believed was being spread by [Appellant].@ 
Maldonado asserted in his affidavit that the facts stated in his
affidavit were within his personal knowledge and were true and correct.  Such assertions may be sufficient to show a
lack of malice if uncontradicted.  See
Roberts, 160 S.W.3d at 263.





[9]We note that Maldonado states in
his affidavit that A[Appellant] was erroneously
listed . . . in [Appellee=s Directory].@  [Emphasis added.]





[10]Honda=s e-mail address is listed as
KHonda@bellhelicopter.textron.com.  We
infer, for purposes of reviewing this evidence, that Honda was one of Appellee=s employees.  No direct evidence was provided that Honda
was Appellee=s employee, but the issue itself is
not raised by either party, other than perhaps with regard to Appellee=s authentication objections.





[11]In a previous e-mail to Moore on
the same day, Honda indicated that partial approval had been granted, but that
full CSF approval had two more steps, and he estimated another four to six
weeks= wait.





[12]The e-mail stated:

 

When we meet [sic] in El Salvador
at the Bell Maintenance conference, you gave me a copy of your new approved
repair station in Guatemala.  I recall
allowing you to go ahead and summit [sic] your application to our CSF
Department for processing and approval. 
It was my impression at the time, that by having the repair station
license that you physical [sic] had access to the facility.  Unfortunately, as you have informed us, there
have been some hurdles in way to actually move into your Anew locally approved facility.@ 

 

At this point, we at [Appellee]
have approved [Appellant] in the first step (CSF Board), and allowed to proceed
to the next step AIndependent Representative Board@ (which is where we give the final
approval to go to TEXTRON).

 

Due to the situation that has
evolved with you getting your facility, I have asked Koichi [Honda] to hold
onto your application until we can verify that you are in the facility that we
will be approving.  I have asked Koichi
[Honda] when you are fully installed, to make a visit and survey your new
facility once you are physically in. 
This will insure our management that we are approving a company that
will offer the services that we would like our customers to receive.