**PIONEER CONCRETE OF TEXAS, INC. and Gene Tanner, Appellants,**

v.

**Troy Lester ALLEN, Appellee.**

**No. C14–92–00816–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 8, 1993.

Rehearing Denied Aug. 5, 1993.

---

Carla Bennett, Houston, for appellants.

Richard S. London, Russell C. Simon, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

ROBERTSON, Justice.

Pioneer Concrete of Texas, Inc. (Pioneer), and Gene Tanner (Tanner), appellants, bring this appeal from an adverse judgment in a defamation action brought by Troy Lester Allen (Allen), appellee. Appellants raise three points of error. We reverse and render.

Allen brought suit against Pioneer and Tanner,[1] alleging wrongful termination, defamation and fraud. The jury found that Tanner was acting within the scope of his employment with Pioneer; Tanner's state-

---

1. Allen also brought suit against Pioneer Concrete of America, Inc. but non-suited this entity after trial.

ments to J.T. McCullough (McCullough) were defamatory; the statements were not published with malice; and the statements by Tanner were not true. The jury also found that appellants did not commit fraud nor did they wrongfully terminate appellee.

As a result of the defamatory statements, the jury found damages for past lost wages; past mental anguish, humiliation and embarrassment; damage to reputation and character; general impairment of social and mercantile standing; punitive damages; and attorney's fees. The final judgment entered by the trial court did not include the punitive damages or attorney's fees found by the jury.

In their first point of error, Pioneer and Tanner claim the trial court erred as a matter of law in denying both their request to disregard jury findings and motion for new trial. Specifically, Tanner and Pioneer asked the trial court to disregard the jury's findings to Jury Questions 2 and 5. Question 2 asked the jury if the statements made by Tanner were defamatory. The jury answered "yes." Question 5 asked the jury to assess damages as a result of the defamatory statements. In response, the jury awarded a total of $141,717.00 in damages. Pioneer and Tanner contend the answers to these two issues should be disregarded because the statements made by Tanner to McCullough were subject to a qualified privilege.

■ It is undisputed by either party that whether a qualified privilege exists is a question of law. *See Houston v. Grocers Supply Co.*, 625 S.W.2d 798, 800 (Tex. App.—Houston [14th Dist.] 1981, no writ); *Bergman v. Oshman's Sporting Goods, Inc.*, 594 S.W.2d 814 (Tex.Civ.App.—Tyler 1980, no writ); *Mayfield v. Gleichert*, 484 S.W.2d 619 (Tex.Civ.App.—Tyler 1972, no writ). Neither side disputes the facts surrounding the publication of these statements and both agree that the statements are not ambiguous. While the existence of a conditional privilege at times can be a question of fact, where the facts are undisputed and the language used in the publication is not ambiguous, the question of privilege is one of law for the court. *Dixon v.*

*Southwestern Bell Tel. Co.*, 607 S.W.2d 240, 241–43 (Tex.1980).

■ Tanner and Pioneer argue that the statements made by Tanner are either protected by a general qualified privilege or by a specific type of privilege designed to protect communications between former employers and prospective employers. This specialized privilege protecting a former employer's statements about a former employee to a prospective employer is well established in Texas. *See Smith v. Holley*, 827 S.W.2d 433, 436 (Tex.App.—San Antonio 1992, writ denied); *Houston*, 625 S.W.2d at 800; *Bergman*, 594 S.W.2d at 816; *Butler v. Central Bank & Trust Co.*, 458 S.W.2d 510, 514–15 (Tex.Civ.App.—Dallas 1970, writ dism'd); *Duncantell v. Universal Life Ins. Co.*, 446 S.W.2d 934, 937 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). However, Allen argues that McCullough was not a prospective employer of Allen. We do not find it necessary to reach this argument because the statements made by Tanner fall under the general definition of a qualified privilege.

■ A "conditional" or "qualified" privilege protects communications made in good faith on a subject matter in which the author has a common interest with the other person, or with reference to which he has a duty to communicate to the other person. *See Smith*, 827 S.W.2d at 436; *Houston*, 625 S.W.2d at 800; *Moore & Assoc. v. Metropolitan Life Ins. Co.*, 604 S.W.2d 487, 490 (Tex.Civ.App.—Dallas 1980, no writ). If a conditionally privileged slanderous statement is motivated by malice to any degree, the privilege is lost. *Houston*, 625 S.W.2d at 801; *Bridges v. Farmer*, 483 S.W.2d 939 (Tex.Civ.App.—Waco 1972, no writ).

■ Pioneer and Tanner had the burden to plead and prove the qualified privilege. *Denton Publishing Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex.1970). Allen claims they failed to meet this burden because they did not prove that Tanner reasonably believed that facts existed in which McCullough also had a common interest and was entitled to know. *See Gulf Const. Co. v.*

*Mott,* 442 S.W.2d 778, 784 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ). Tanner and Pioneer were required to prove that either Tanner made the communications in good faith on a subject matter in which he had a *common interest* with McCullough, *or* with reference to which he had a *duty* to communicate to McCullough. If the evidence showed a common interest *or* a duty on the part of Tanner to share the information, then the statements were covered by a qualified privilege.

To support his argument that Tanner and Pioneer did not sustain their burden, Allen points to the testimony given by Tanner during cross examination.

Q: Did you have any kind of duty to Mr. McCullough to provide him with any kind of reference on Mr. Allen?

A: No, sir. and I probably should have hung up on him.

Q: But you didn't do that, did you?

A: No, sir.

Q: Did you have any duty to Mr. Allen to give a reference out on him? Do you owe him a duty?

A: I think I owe him a courtesy.

Q: But you didn't owe him a courtesy and didn't owe Mr. McCullough a duty?

A: Huh-uh

Q: No, Sir?

A: No, Sir.

While we do not believe that this testimony alone negates what is meant by a duty to share, we are even more strongly convinced that it does not negate the fact that Tanner and McCullough shared a common interest about the information.

The evidence is undisputed that Allen formerly worked for Pioneer, and that for a period of time Tanner served as his supervisor. Allen went to McCullough to seek assistance in finding employment. McCullough ran a firm that served as a "head hunter" for a variety of employers. His services were paid for by employers once he matched them with qualified employees. McCullough informed Allen that he needed to check out his references. Tanner was the only reference from Pioneer that Allen gave McCullough. Allen gave McCullough permission to check his

references. McCullough called Tanner and asked him questions regarding Allen's employment at Pioneer. McCullough testified that he asked Tanner about Allen's capabilities and at that time Tanner responded with the defamatory statements. McCullough also testified that he did not have to prompt Tanner into making the statements.

■ We believe that the evidence did show that Tanner and McCullough shared a common interest. A conditional privilege has been recognized "whenever a public or private interest in the availability of correct information is of sufficient importance to require protection of honest communication of misinformation." *Kaplan v. Goodfried,* 497 S.W.2d 101, 105 (Tex.Civ.App.—Dallas 1973, no writ) (citations omitted). An *interest* giving rise to a qualified privilege may be that of the publisher of the communication, the recipient, or a third person. *Id.* Communications given voluntarily, rather than in response to a request for information, are privileged "if the relationship between the parties is such that it is within generally accepted standards of decent conduct to furnish the information for the protection of the interest of the recipient." *Id.* at 105–06.

■ McCullough identified himself to Tanner and explained why he sought information regarding Allen. He then began to ask questions about Allen. McCullough testified that he checked on references because he would not refer a prospective applicant whose references did not check out. He testified that he expected honest answers to his questions. The work habits and skills of Allen established a common interest between Tanner and McCullough. Even though Tanner said he did not have a "duty" to speak with McCullough and serve as a reference for Allen, once he made the affirmative act to do so, he did have the responsibility to give what he thought was correct information. The common interest between the two men requiring honest communications arose once he began to answer McCullough's questions. Therefore, the trial court erred as a matter of law in refusing to disregard the

jury's findings to Questions 2 and 5 because the statements made by Tanner were covered by a qualified privilege.

Allen would still be entitled to recover if the statements made by Tanner were made with malice. The jury found that the statements were not made with malice. Therefore, Tanner and Pioneer were protected by a qualified privilege. Appellant's first point of error is sustained.

As the resolution of this issue is dispositive of this appeal, we need not address appellants' remaining points of error. Accordingly, the judgment of the trial court is reversed, and we render a take nothing judgment for Allen.

BOWERS, J., dissents.