Roland A. ORTIZ, Appellant,

v.

SAN ANTONIO CITY EMPLOYEES FEDERAL CREDIT UNION and Clearing House Association of the Southwest, Appellees.

No. 04–97–00906–CV.

Court of Appeals of Texas, San Antonio.

June 24, 1998.

**834**

Jeffrey S. Bernstein, San Antonio, Scott Roberts, San Antonio, for Appellant.

Grant T. McFarland, Ryan G. Anderson, Ball & Weed, P.C., San Antonio, Judith R. Blakeway, Wells, Pinckney & McHugh, P.C., San Antonio, for Appellees.

Before HARDBERGER, C.J., and RICKHOFF and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

Appellant, Roland A. Ortiz ("Ortiz"), sued appellees, San Antonio City Employees Federal Credit Union ("Credit Union") and Clearing House Association of the Southwest ("Clearing House"), claiming that he had been defamed by an alert issued by the Clearing House at the request of the Credit Union regarding check kiting activity. Ortiz appeals the summary judgments granted in favor of the Credit Union and Clearing House. We affirm the trial court's judgments.

## FACTUAL AND PROCEDURAL HISTORY

In October of 1996, Sandra Moreno, an employee of the Credit Union, notified her supervisor, Craig Sanders, of some suspicious activity involving several accounts. Moreno began investigating the accounts for return deposit items. Ortiz's account was being investigated because he deposited a check into his account that was returned for insufficient funds. The maker of this check was IBS Insurance, which had written a series of checks that were returned for insufficient funds. Ortiz testified in his deposition that the check was for the rental of a building he owned.

As a result of Moreno's investigation, Ortiz's accounts were flagged. The flagging of accounts was the Credit Union's internal method of attaching a message to the accounts. The flagging of Ortiz's accounts resulted in the placement of a hold on all checks deposited to his accounts for a period of time to ensure those checks would not be returned for insufficient funds. The Credit Union also sent an alert to Clearing House for distribution. Clearing House is designed to operate as a loss avoidance alert system and provides information for a fee to subscribers and free-of-charge to the law enforcement community. Although the Credit Union was not a current Clearing House subscriber, it was contemplating subscribing to the service.

The alert requested that all loss avoidance recipients take note of the information that followed involving kiting activity. The alert listed four accounts as involved, belonging to: (1) K & J Associates; (2) David Fernandez; (3) Veronica Vargas; and (4) Roland Ortiz. The alert then detailed that a series of checks from Insurance Services and IBS In-

surance were returned due to insufficient funds. The alert further detailed that deposits of checks from Insurance Services or IBS Insurance were being placed on hold, and accounts to which checks from these entities had been deposited were being flagged. With regard to Ortiz, the alert provided the following detail:

> ARMANDO ROCHA FROM SACU 258–1404 CALLED TO LET ME KNOW SOME CHECKS ARE BEING RETURNED—MADE TO K & J ASSOC. ACCT. # 546400 FOR $ 1500.00 MADE TO DAVID FERNANDEZ ACCT. # 367530 FOR $ 1200.00 & $ 1800.00—MADE TO ROLAND ORTIZ ACCT. # 253810 FOR $ 500.00. I FLAGGED ACCT. ON MR. ORTIZ, OTHER ACCTS ALREADY FLAGGED.

The alert ended by summarizing the accounts that had been flagged, including four account numbers for Ortiz. The alert was sent to all Clearing House subscribers and law enforcement agencies.

After the alert was sent, a friend of Ortiz, who worked at the Texas Alcohol and Beverage Commission, contacted him regarding the alert. Ortiz testified that the friend was surprised and did not know what to make of the alert. The friend told Ortiz that the alert said that Ortiz was involved in kiting activity. The friend asked Ortiz whether he knew anything about IBS Insurance, and Ortiz responded that he leased space to them. Ortiz requested that the friend send him a copy of the alert.

Ortiz contacted the Credit Union about the alert and spoke with Craig Sanders. Sanders told Ortiz that the information relating to his accounts should not have been published. Sanders promised to contact Clearing House and have the information regarding Ortiz deleted from the alert.

Ortiz testified that he and his wife were hurt and embarrassed by the alert. Ortiz stated that they were in a daze and felt sick. Ortiz admitted that the information did not affect his position at work, his assignments, his salary, or his credit.

The Credit Union moved for summary judgment on four grounds: (1) the alert was not defamatory; (2) the information in the alert, if defamatory, was true; (3) the Credit Union's actions were privileged, and it had not acted with malice; and (4) Ortiz was not damaged by the alert. The Clearing House moved for summary judgment on two grounds: (1) the alert was not defamatory; and (2) Clearing House's actions were privileged, and it had not acted with malice.

Excerpts from Ortiz's deposition were attached to the summary judgment motions. During his deposition, Ortiz admitted the statements in the alert were true, but Ortiz claimed that he was defamed by the inference that he was involved as a participant in check kiting activity, rather than a victim. Ortiz testified that this inference hurt and embarrassed him and his wife. Affidavits from Sanders and an employee of Clearing House were also attached to the motions. Sanders and the other employee stated that they did not know or have reason to know that any statements in the alert were false, and they did not entertain any doubts as to the truth of the statements. They also stated that they did not act with ill will or bad feelings toward Ortiz.

Ortiz filed responses to the summary judgment motions, contending the alert accused him of check kiting and was defamatory per se. Ortiz also contended that no privilege existed based on Sanders's failure to investigate and verify the information provided by Moreno and his communication of such information to Clearing House, with which the Credit Union had no contractual relationship. Ortiz asserted that Sanders and the Clearing House employee acted with reckless disregard for the truth, and their affidavits to the contrary were not competent summary judgment evidence. Finally, Ortiz responded that no proof of injurious character was required since the alert was libelous per se.

Summary judgments were granted in favor of the Credit Union and Clearing House. Although Ortiz asserted various claims in his petition, he subsequently non-suited all claims other than the defamation claim. Ortiz appeals the granting of the summary judgments.

## STANDARD OF REVIEW

The general standard for reviewing a motion for summary judgment has been clearly established. The movant for summary judgment is first required to disprove at least one of the essential elements of each of the plaintiff's causes of action in order to prevail on summary judgment. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). This initial burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in favor of the non-movant. *Id.* Any doubt is resolved in favor of the non-movant. *Id.*

A defendant moving for summary judgment based on an affirmative defense must conclusively prove all elements of that defense as a matter of law such that there is no genuine issue of material fact. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494–95 (Tex.1991); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). Once the defendant produces sufficient evidence to establish a right to summary judgment, the plaintiff must set forth sufficient evidence to give rise to a genuine issue of material fact. *Pinckley v. Dr. Francisco Gallegos, M.D., P.A.*, 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied).

In the instant case, the trial court granted general summary judgments. Therefore, we must consider whether any theory asserted in the motions filed by the Credit Union and the Clearing House supports the summary judgments. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). We will affirm the summary judgments if any theory is meritorious. *Id.*

## DEFAMATORY LANGUAGE

■ A statement is defamatory if it tends to injure a person's reputation or to impeach a person's honesty, integrity, virtue, or reputation. TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997); *see also San Antonio Express News v. Dracos*, 922 S.W.2d 242, 247–48 (Tex.App.—San Antonio 1996, no writ). Whether words are capable of a defamatory meaning is a question of law for the court. *Musser v. Smith Protective Services, Inc.*, 723 S.W.2d 653, 654–55 (Tex.1987); *Dracos*, 922 S.W.2d at 248. The court must construe a statement alleged to be defamatory as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Musser*, 723 S.W.2d at 655; *Dracos*, 922 S.W.2d at 248. A jury may only be called upon to determine a statement's meaning and the effect of its publication on an ordinary reader if the court initially determines that the language is ambiguous or of doubtful import. *Musser*, 723 S.W.2d at 655; *Dracos*, 922 S.W.2d at 248.

Ortiz contends that the alert accused him of check kiting because it stated that his account was involved in kiting activity without indicating the manner of involvement. Ortiz asserts that an ordinary reader would infer that Ortiz was involved as a participant in the check kiting scheme, rather than as a victim. The Credit Union and the Clearing House respond that the accompanying detail reveals that Ortiz's account was involved because he had deposited a check from IBS Insurance that was returned.

■ Check kiting is a species of fraud consisting of the exchange of checks of approximately the same dates and amounts between two banks for the purpose of obtaining money. *Denby v. State*, 654 S.W.2d 457, 459 (Tex.Crim.App.1983), *overruled on other grounds, Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App.1991). It is a process where checks written on one account are continually covered with deposits of checks written on another account, thereby creating positive statement balances and preventing overdrafts but resulting in a steadily decreasing deficit in the collective balance in most of the accounts. *Id.* Check kiting necessarily involves two or more accounts.

■ The alert states that Ortiz's account was involved in kiting activity without specifying the nature of that involvement. Since we are required to indulge all reasonable

inferences and doubt in Ortiz's favor, we agree with Ortiz that the alert is ambiguous as to the nature of Ortiz's involvement in the kiting activity, and a jury would be required to determine whether an ordinary reader would understand that Ortiz was only involved as a victim. Therefore, the summary judgments should not have been granted on the basis that the alert was not defamatory; however, we must consider whether the Credit Union and Clearing House were entitled to summary judgment on another basis. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d at 380.

### STATEMENTS TRUE

■ Only the Credit Union moved for summary judgment based on the truth of the statements in the alert. The truth of a statement on which a defamation action is based is a defense to the action. TEX. CIV. PRAC. & REM.CODE ANN. § 73.005 (Vernon 1997). A showing of substantial truth at a summary judgment hearing will defeat a defamation claim. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex.1990); *Dracos*, 922 S.W.2d at 249.

■ Although Ortiz admits that his account was involved in the kiting activity by his misfortune in receiving an insufficient funds check from a party that appeared to be engaged in check kiting, Ortiz contends that the alert inferred that he was actually engaged in check kiting, not an innocent victim of the activity. Ortiz asserts that we must ignore the literal truth of the statements given the inference that can be drawn from those statements. We disagree.

The Credit Union was only required to show substantial truth to defeat the defamation claim. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex.1990); *Dracos*, 922 S.W.2d at 249. By Ortiz's own admission, the alert contained no untrue statement. The summary judgment in favor of the Credit Union is affirmed.

### QUALIFIED PRIVILEGE

■ Clearing House relied on the defense of privilege in its summary judgment. A conditional or qualified privilege applies to communications made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform to another person having a corresponding interest or duty. *Lomas Bank USA v. Flatow*, 880 S.W.2d 52, 54 (Tex.App.—San Antonio 1994, writ denied). Whether a conditional or qualified privilege exists is a question of law for the court. *Calhoun v. Chase Manhattan Bank (U.S.A.), N.A.*, 911 S.W.2d 403, 408 (Tex.App.—Houston [1st Dist.] 1995, no writ). A communication will lose its privileged character if it is made to someone outside the interest group. *Id.*

■ The financial institutions comprising the banking industry have an interest in avoiding losses occasioned by check kiting schemes, and, in fact, Clearing House had a contractual obligation to provide information to prevent such losses to its subscribers. Ortiz asserts Clearing House's privilege was lost by communicating the information to customers in Dallas. Ortiz contends that Clearing House has failed to show that Dallas subscribers would be interested in check kiting activity involving San Antonio residents and institutions. We disagree.

In *Dun & Bradstreet, Inc. v. O'Neil*, the Texas Supreme Court upheld a credit reporting agency's privilege to disseminate information to those subscribers to whom the agency had a contractual obligation to provide the information. 456 S.W.2d 896, 899 (Tex.1970). In this case, Clearing House had a contractual obligation to provide the information to its Dallas subscribers. Furthermore, the Dallas institutions would be interested in the information to ensure that appropriate action would be taken in the event their customers or members received and attempted to deposit a check written by Insurance Services and IBS Insurance. The knowledge was important to all financial institutions to aid in preventing losses, and all financial institutions would be interested in the information. The possibility that entities doing business in San Antonio may also do business in Dallas is not overly remote. Therefore, the Dallas subscribers were not outside the interest group, and the summary judgment in favor of Clearing House is affirmed.

## CONCLUSION

Indulging all reasonable inferences and doubt in favor of Ortiz, we believe a question of fact exists as to the defamatory nature of the alert. However, the statements contained in the alert were true, and Clearing House was privileged in disseminating the information to its subscribers. Therefore, we affirm the summary judgments.