COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-126-CV

CENTRAL AMERICAN AVIATION APPELLANT

SERVICES, S. A.

V.

BELL HELICOPTER TEXTRON, INC. APPELLEE

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Central American Aviation Services, S.A. appeals the trial court’s summary judgment on its claims of defamation per se and tortious interference with prospective contractual relationships.  We affirm.

BACKGROUND

Appellant is a helicopter service facility.  Appellee manufactures helicopters and has a network of more than 150 independently-owned, authorized Customer Service Facilities (“CSFs”) worldwide.  One benefit associated with Appellee’s CSF designation is a full-page advertisement in Appellee’s official Customer Support and Services Directory (“Directory”).  In 2002, Appellant submitted its CSF application to Appellee.  Appellee included Appellant in the 2003 Directory as a CSF before Appellant’s CSF application was approved.  Appellee ultimately declined Appellant’s CSF application.
(footnote: 2)
 On August 22, 2003, Appellee sent out the following letter (“Letter 1”), addressed “To Whom it May Concern”:
(footnote: 3)
 It has been brought to [Appellee’s] attention that [Appellant] has been promoting itself as a legally appointed [CSF].  This is not an accurate statement.  [Appellant] is not a [CSF].

[Appellee] published a directory with a printing error, which included [Appellant] as a certified CSF.  Again, this was a printing error and in no way implies that [Appellant] is a certified [CSF].

The only certified and legally appointed CSF in Central America is Aeroservicios AVE (AVESA) in Guatemala.

On February 18, 2004, the same letter (“Letter 2”) was addressed, and presumably sent,
(footnote: 4) to Comandante Julio César Santamarina Montabán of the Guatemalan air force.  “[Appellant] has been promoting itself as a legally appointed [CSF]” is the statement at issue in both letters.

Both parties’ exhibits contained a letter from a company in Guatemala, (“Volar letter”) dated March 5, 2004, and addressed to Danny Maldonado, Appellee’s executive director of Latin American Sales.  Translated from Spanish,
(footnote: 5) it reads as follows:

In response to your question, I hereby confirm our commercial relationship with [Appellant] in Guatemala on the year 2002 and 2003, whom at a given moment expressed to be Authorized Representatives of [Appellee], documenting their representation with the [Directory] published by you all, reason for which we decided to hire certain services directly with [Appellant].

Appellant sued Appellee for “not less than $88,000,000.00” in damages based on service contracts and bids for future services contracts, which it claimed it lost as a result of Appellee’s letters.  Appellee moved for summary judgment, raising a defense of qualified privilege to both of Appellant’s claims, “[e]ven if one assumes that the statements made by [Appellee] are defamatory and factually false,” and claiming that the evidence established that it acted without actual malice.  Among the attachments to its motion, Appellee included Appellant’s response to its request for admission number four: “[Appellee] had an interest in ensuing [sic] that the public has accurate information regarding the identities of authorized Bell [CSFs].”  Appellant’s response: “Admit.”

Trial Court’s Judgment

The trial court issued a letter judgment on February 17, 2006, stating, “Following our hearing of February 16, 2006, I reviewed [Appellant’s] summary judgment evidence and found no evidence of actual malice.  That being the case, I find for [Appellee] and grant its motion for summary judgment.” However, in its March 15, 2006 final summary judgment order, the trial court did not state the basis for the summary judgment, other than that it granted Appellee’s motion as to all of Appellant’s claims “[a]fter considering the pleadings, the papers on file, the evidence, and the arguments made by the parties.”  It ordered that Appellant take nothing on its claims and dismissed Appellant’s claims with prejudice.

SUMMARY JUDGMENT

In two issues, Appellant asserts that the trial court should not have granted summary judgment on its claims of defamation per se and tortious interference with prospective contracts because it met its burden in establishing those claims and presented evidence creating material fact issues as to both. Appellant also argues that Appellee failed to meet the elements necessary to assert a qualified privilege to defeat Appellant’s claims.

Standard Of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P
. 166a(c); 
Sw. Elec. Power Co. v. Grant
, 73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth
., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Sw. Elec. Power Co.
, 73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.  
Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678.  When, as here, the trial court does not specify the grounds upon which a summary judgment was granted, we affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious.  
Cincinnati Life Ins. Co. v. Cates
, 927 S.W.2d 623, 626 (Tex. 1996); 
Carr v. Brasher
, 776 S.W.2d 567, 569 (Tex. 1989).

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.  
Rhone-Poulenc, Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999); 
see
 
Tex. R. Civ. 
P. 166a(b), (c).  To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.  
Ryland Group, Inc. v. Hood
, 924 S.W.2d 120, 121 (Tex. 1996).

Preservation Of Error

Appellee complains of Appellant’s exhibits 4, 6, 7, 8, and 9, arguing that although they were attached to an affidavit, the affidavit did not authenticate them.  Appellant complains that Maldonado’s affidavit should not be considered, on an “interested witness” theory raised with the trial court in footnote six of its response in opposition to Appellee’s motion for summary judgment.  Maldonado’s affidavit was attached to Appellee’s motion to support its claim that it acted in good faith to protect its customers by sending out the letters.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P. 
33.1(a); 
see also 
Tex. R. Evid
. 103(a)(1).  If a party fails to do this, error is not preserved, and the complaint is waived.  
Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g).  The objecting party must get a ruling from the trial court.  This ruling can be either express or implied.  
Frazier v. Yu
, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied).  If trial judge refuses to rule, an objection to the refusal to rule is sufficient to preserve error.  
Tex. R. App. P
. 33.1(a)(2).

Objections to a lack of verification and authentication are defects of form.  
Wrenn v. G.A.T.X. Logistics, Inc
., 73 S.W.3d 489, 498 (Tex. App.—Fort Worth 2002, no pet.).  As such, Appellee was required to raise its objections and obtain rulings in the trial court to be able to assert its complaints in this court.  
Id.
  The trial court did not rule on these objections.  Therefore, these objections were not preserved.  
See id. 
 An affidavit of an interested witness also presents a defect of form.  
See Ahumada v. Dow Chem. Co.
, 992 S.W.2d 555, 562 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  Because the trial court did not rule on Appellant’s objection to Maldonado’s affidavit, this objection was also not preserved.
(footnote: 6)  
Id
.

Appellant’s Prima Facie Claims 

To establish its defamation claim, Appellant had the burden to show that Appellee (1) published a statement (2) that was defamatory concerning Appellant (3) while acting at least negligently with regard to the truth of the statement.  
WFAA-TV, Inc. v. McLemore
, 978 S.W.2d 568, 571 (Tex. 1998), 
cert. denied, 
526 U.S. 1051 (1999).  To establish its tortious interference with prospective contracts claim, Appellant had the burden to show that (1) there was a reasonable probability that the parties would have entered into a contractual relationship, (2) Appellee committed an independently tortious or unlawful act that prevented the relationship from occurring, (3) Appellee did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct, and (4) Appellant suffered actual harm or damage as a result of Appellee’s interference.  
See Brown v. Swett & Crawford of Tex., Inc.
, 178 S.W.3d 373, 381-82 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

To satisfy its tortious interference claim, Appellant had to prove its defamation claim, the “independently tortious or unlawful act.”  
Id
.  And if Appellant met its initial burden on the defamation claim, summary judgment was still appropriate if Appellee satisfied its qualified privilege affirmative defense.  
See Rhone-Poulenc, Inc.
, 997 S.W.2d at 223.  In its February 17, 2006 letter judgment granting Appellee summary judgment for the reason that there was “no evidence of actual malice” to destroy the privilege, the trial court impliedly found that Appellant met its defamation and tortious interference claims and that Appellee met its qualified privilege affirmative defense. Assuming, but not deciding, that Appellant met its initial burden, we review whether Appellee proved the elements of qualified privilege.

Qualified Privilege

A qualified privilege may apply to defamatory statements if the statements were made in good faith and without malice, on a subject in which the maker has an interest or duty, to another person having a corresponding interest or duty.  
See Dixon v. Sw. Bell Tel. Co. 
607 S.W.2d 240, 242 (Tex. 1980); 
see also Roberts v. Davis
, 160 S.W.3d 256, 263 (Tex. App.—Texarkana 2005, pet. denied)
.  To claim the privilege, Appellee also had to demonstrate that the statement was limited to its proper scope, occasion, manner of publication, and parties.  
Roberts
, 160 S.W.3d at 263.  Whether a privilege exists is a question of law for the court.  
See Gray v. HEB Food Store No. 4
, 941 S.W.2d 327, 330 (Tex. App.—Corpus Christi 1997, writ denied).  Because Appellee moved for summary judgment on the basis of qualified privilege, it had the burden to conclusively establish its affirmative defense.  
See Roberts
, 160 S.W.3d at 263; 
Gray
, 941 S.W.2d at 330.

Appellant argues that Appellee’s statements were not entitled to protection by qualified privilege because Appellee failed to establish (1) that it acted in good faith in issuing the letters and (2) that dissemination of the publication was limited to the proper parties.

Proper Parties

Appellant claims that Appellee did not limit the dissemination of the allegedly defamatory statements because Appellee sent its letters to all parties who, according to Appellant, Appellee “conceivably believed may have been misled—including those parties whose misunderstanding was 
solely
 caused by [Appellee’s] inclusion of [Appellant] in its 2003 Directory and parties who were previously oblivious to the situation.”

A qualified or conditional privilege has been recognized when a public or private interest in the availability of correct information is of sufficient importance to require protection of honest communication of misinformation.  
See Pioneer Concrete of Tex., Inc. v. Allen
, 858 S.W.2d 47, 50 (Tex. App.—Houston [14th Dist.] 1993, writ denied)
.  It remains intact as long as the communication passes only to persons having an interest in the matter to which the communication relates.  
See Richard Rosen, Inc. v. Mendivil
, No. 08-04-00077-CV, 2005 WL 3118005, at *11-*12 (Tex. App.—El Paso Nov. 23, 2005, pet. denied) (holding that communication of defamatory statement without any business reason to do so was sufficient to defeat former employer’s qualified privilege claim); 
see also Ortiz v. San Antonio City Employees Fed. Credit Union
, 974 S.W.2d 833, 837 (Tex. App.—San Antonio 1998, no pet.) (holding that qualified privilege applied when company had a contractual obligation to its subscribers to inform them and also because those subscribers had an interest to ensure that appropriate action would be taken on behalf of their own customers).  Communications that pass beyond those with an interest in the subject matter are not privileged.  
See Henriquez v. Cemex Mgmt., Inc
. 177 S.W.3d 241, 253 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that privilege applied when plaintiff agreed in deposition testimony that all persons present at the meetings in which the defamatory statements were made had a right to participate in the investigation of the wrongful conduct allegations).  Therefore, whether Appellee issued its letters to the proper parties depends on whether the parties to whom the letters were sent shared an interest with Appellee in the information contained within the letters.  
See Allen
, 858 S.W.2d at 50.

Here, Appellee attached to its summary judgment motion a copy of Appellant’s response to Appellee’s request for admissions number four.  In this response, Appellant admitted that Appellee had an interest in ensuring that the public had accurate information regarding the identities of authorized CSFs.  A matter admitted under rule 198.3 “is conclusively established as to the party making the admission.”  
See 
Tex. R. Civ. P
. 198.3.  Therefore, for the privilege to apply, the parties to whom the statements, “[Appellant] has been promoting itself as a legally appointed [CSF]” and that Appellant was not in fact a CSF, were communicated had to share Appellee’s interest in accurate information, and in preventing misrepresentations, with regard to the identities of authorized CSFs.  
See Allen
, 858 S.W.2d at 50
.

To substantiate its claim, Appellee attached to its summary judgment motion the Volar letter, which indicated that Appellant had misrepresented itself to Volar as a CSF using the Directory, and the affidavit of Maldonado, whose signature appears on both Letters 1 and 2.  Maldonado’s affidavit stated that the letters were sent “[i]n an effort to correct the confusion caused by the error in the directory and to ensure that [Appellee’s] customers had accurate information regarding [Appellant’s] status,” because Appellee had “received reports that [Appellant] had represented itself as a Bell CSF to various third parties.”  Because of alleged misrepresentations to Appellee’s customers regarding Appellant’s status, then, Appellant’s correct status would be a “private interest in the availability of correct information,” shared by Appellee and its customers.  
See id.

Because Appellant does not claim that Appellee sent the letters to the public, which Appellant admitted Appellee had an interest in informing as to correct CSF identities, but rather to all parties who Appellee “conceivably believed may have been misled,” that is, parties with an interest in the proper identity of Appellee’s CSFs and in not being subjected to possible misrepresentations,
(footnote: 7) we conclude that Appellee met its burden with regard to the proper parties of its qualified privilege claim.  
See id
; 
Henriquez
, 177 S.W.3d at 253; 
Roberts
, 160 S.W.3d at 263.

Good Faith & Actual Malice

When publication of a defamatory statement is made under circumstances creating a qualified privilege, the plaintiff has the burden to prove malice or the want of good faith, but when the defendant moves for summary judgment, the defendant has the burden of proving absence of malice.  
See Martin v. Sw. Elec. Power Co.
, 860 S.W.2d 197, 199 (Tex. App.—Texarkana 1993, writ denied).  That is, the law generally presumes good faith and want of malice when a statement is made under circumstances giving rise to a qualified privilege.  
See Free v. Am. Home Assur. Co.
, 902 S.W.2d 51, 55 (Tex. App.—Houston [1st Dist.] 1995, no writ).  That privilege is lost, however, if the statement was in any degree actuated by malice.  
Id
.  Therefore, because Appellee was the movant, it had the burden to prove the absence of malice.  
See id.

A showing of good faith and the absence of malice requires an inquiry into the motive and reasonableness behind the statements, as well as the speaker’s knowledge of falsity of the statements.  
See Zarate v. Cortinas
, 553 S.W.2d 652, 654-55 (Tex. Civ. App.—Corpus Christi 1977, no writ).  “Good faith” is a state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one’s duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage.  
Black’s Law Dictionary 
713 (8th ed. 2004).  Because there are no allegations or evidence presented requiring a review of commercial standards or suggesting Appellee had an intent to defraud Appellant, we will apply only the first two definitions of “good faith.”

To defeat a qualified privilege, the statements at issue must have been  actuated, inspired, or colored by actual malice existing at the time of publication or by some evil motive or bad faith.  
E. Tex. Med. Ctr. Cancer Inst. v. Anderson, 
991 S.W.2d 55, 60 (Tex. App.—Tyler 1998, pet. denied).  Malice sufficient to overcome a qualified privilege in a defamation action requires a showing that the defendant acted with knowledge or in reckless disregard of the falsity of the publicized matter, that is, that it entertained serious doubts about the truth of the statement.  
See Gray, 
941 S.W.2d at 330.  Only if Appellee put forth sufficient proof that it acted in good faith and without actual malice did the burden shift to Appellant to put forth controverting evidence to create a material fact issue.

Appellee attached copies of Letters 1 and 2 to its summary judgment motion.  The apparent intent behind both letters was to inform Appellee’s customers and to put them on notice that Appellant was not a CSF.
(footnote: 8)  Appellee attached the Volar letter to its motion to support its belief that Appellant had promoted itself as a CSF using Appellee’s Directory.  Altogether, the Volar letter, Maldonado’s affidavit, and Letters 1 and 2 provide Appellee with a good faith basis for making the statement to its customers that “[i]t has been brought to [Appellee’s] attention that [Appellant] has been promoting itself as a legally appointed [CSF].”  Maldonado states in his affidavit that “[Appellee] had no reason to believe that the statements contained within the letters were false.”  Therefore, initially, Appellee met its burden of demonstrating that it acted in good faith and without actual malice.

Appellant’s Evidence 

Appellant counters that Appellee 
did
 act with actual malice, arguing that Appellee’s conduct demonstrated either a reckless disregard for the truth, or that it acted with actual knowledge of the falsity of its statements.  A plaintiff can bar summary judgment by presenting evidence that creates a fact question on at least one element of each affirmative defense advanced by the defendant.  
See Hanssen v. Our Redeemer Lutheran Church
, 938 S.W.2d 85, 90 (Tex. App.—Dallas 1996, writ denied).  Here, Appellant attempts to meet that burden by presenting, as evidence to demonstrate that Appellee acted with actual malice, Appellee’s reference in Maldonado’s affidavit to “reports” from third parties when it only attached a single letter, the Volar letter, in support of this fact; the date on the Volar letter; Appellee’s “printing error”; Appellee’s verb choices in Letters 1 and 2 to its customers versus its cease and desist letter to Appellee; and Appellee’s distribution of Letter 2 after Appellant contested the assertions in Letter 1.

Volar Letter

Maldonado’s affidavit does make reference to Appellee receiving “reports.”  It states,

Shortly after the publication of the directory, [Appellee] received reports that the error in the directory resulted in a great deal of confusion over whether [Appellant] was indeed a [CSF], and [Appellee] received reports that [Appellant] had represented itself as a [CSF] to various third parties.

This fact was ultimately verified in writing by a letter from a company in Guatemala stating that in 2002-2003, [Appellant] had represented itself as an authorized representative of [Appellee] and documented this claim by presenting the erroneous 2003 [Directory].

Appellee attached a copy of the Volar letter to its summary judgment motion. Because the affidavit does not specify whether the reports Appellee received were oral or written, but only that the fact of the reports were made and “ultimately verified” by the Volar letter, the absence of additional written reports is insufficient to demonstrate that Appellee acted with a reckless disregard to the alleged falsity of its statement that Appellant had been promoting itself as a CSF, or that Appellee entertained serious doubts about that statement’s truth.  
See Gray
, 941 S.W.2d at 330.

Appellant argues that the timing of the Volar letter demonstrates that Appellee acted without good faith, in that Letter 1 is dated August 22, 2003, Letter 2 is dated February 18, 2004, and the Volar letter is dated March 5, 2004.  It asserts that the Volar letter refers to a “commercial relationship” with Appellant that began in 2002 and “states that the client entered into a working relationship with [Appellant] 
prior
 to the alleged misrepresentations,” thereby negating the letter’s evidentiary value.  However, a plain reading of the Volar letter merely confirms, in response to a question posed by Maldonado to Ramon Zaghi at some earlier time, that Volar did business with Appellant “on the year 2002 and 2003“ in reliance on Appellant’s representation using the Directory. Appellant presented no evidence of the actual release date of the 2003 Directory to contradict this statement.  Because there is no evidence presented of when Maldonado originally spoke with Zaghi, that is, whether he spoke with Zaghi before or after Appellee issued Letters 1 and 2, Appellant’s assertion is insufficient to demonstrate that Appellee acted with a reckless disregard to the alleged falsity of its statements in Letters 1 and 2, or that Appellee entertained serious doubts about the statements’ truth.  
See id.

“Printing Error” 

Appellant takes issue with Appellee’s claim in its motion for summary judgment that Appellant’s inclusion in the Directory was a result of a “printing error.”
(footnote: 9)  Appellant attached evidence to its response in opposition to Appellee’s motion for summary judgment that on October 22, 2002, while its CSF application was pending, Appellee issued the following faxed letter to Appellant:

[Appellee] is now assembling data in preparation to publish the [Directory] for “2003.”  Your participation and contribution is a 
very important 
element to its success.

In order to print the 
most current data
, we ask that the enclosed 
copied page
 containing the information pertinent to your company be reviewed and updated and returned by fax no later than 
November 15, 2002
.

Please fax the revised page to fax (817) 280-6151.  If further information is required please contact the undersigned.  Your prompt attention and reply is appreciated.

The document was unsigned, but listed Koichi Honda, Manager, Customer Support Administration, at its foot, and its header listed Appellee’s mailing address.

In an e-mail to Honda, dated February 17, 2003, Trevor Moore, Appellant’s vice president, asked, “I see in the 2003 [Directory], that [Appellant] is listed as approved.  My only question based on this book, do we legally have the right to advertise as such.”
(footnote: 10)  Honda responded, the same day, with “Legally not as [Appellant] does not have the certificate and agreement signed at this moment.  It’s already in the book as we were hoping you were going to be approved during 2003.”
(footnote: 11)
 An e-mail dated March 3, 2003, from James P. Tripp, Appellee’s Latin America Sales Manager, Integrated Support Solutions, to Moore and Honda referenced some problems that Appellee had heard that Appellant was having with its repair station in Guatemala and indicated that Appellee was going to hold on to Appellant’s CSF application until that facility could be verified.
(footnote: 12)  This email was followed by one from Appellant’s president, on June 20, 2003, to Honda, announcing that Appellant had moved into its new facility and requesting his final inspection.  Appellee issued Letter 1 on August 22, 2003.   Although based on Appellant’s evidence, the “printing error” actually does appear to be Appellee’s 
mistake
 in listing Appellant as a CSF before it had actually been approved, this has no bearing on Appellee’s state of mind in making the alleged defamatory statement at issue here: “It has been brought to [Appellee’s] attention that [Appellant] has been promoting itself as a legally appointed [CSF].”  Although Appellee’s use of “printing error” might tend to indicate an aversion to Appellee’s acknowledging its own mistake in including Appellant in the Directory before Appellant had been approved as a CSF, it does not show that Appellee acted with knowledge or serious doubt about whether Appellant had or had not taken advantage of Appellee’s mistake to misrepresent itself to third parties by using the Directory.  
See id. 

Word Choice

Appellant attached a copy of a letter dated August 26, 2003 from Appellee’s general counsel to Appellant, which stated

It has come to our attention that [Appellant] may have promoted itself as being a duly appointed [CSF] of [Appellee].  We understand that [Appellant] may have used [Appellee’s 2003 Directory], which lists [Appellant] as a CSF, as proof of [Appellant’s] relationship with [Appellee]. 

As you know, [Appellant] is not now, nor has it ever been a [CSF]. The 2003 directory entry listing [Appellant] as a CSF is a mistake. Any attempt by [Appellant] to represent itself as a [CSF] is a misrepresentation of the facts.

[Appellee] must insist that [Appellant] cease and desist any representation to any party that [Appellant] is a [CSF].  [Appellee] considers its network of CSFs to be a valuable part of [the] relationship between [Appellee] and its customers.  Accordingly, [Appellee] will take any legal steps necessary to protect this network against misrepresentation.

Appellant asserts that the language differences between the statement in Letters 1 and 2, stating that “It 
has been 
brought
 
to [Appellee’s] attention that [Appellant] has been promoting itself,” and Appellee’s cease and desist letter to Appellant dated four days after Letter 1, which stated, “It has come to our attention that [Appellant] 
may
 have promoted itself as being a duly appointed [CSF] of [Appellee],” are  evidence of at least a reckless disregard for the truth. [Emphasis added.]

Letters 1 and 2 were signed by Appellee’s executive director for Integrated Support Solutions and Maldonado.  Appellee’s cease and desist letter
 was not signed by these executive directors, but rather, by Appellee’s general counsel.  On its face, the use of “may” in Appellee’s general counsel’s letter is representative more of the language of legal professionals than an indication of doubt, when taken in the context of the “cease and desist” language that followed.  
Cf. Forbes Inc. v. Granada Biosciences, Inc
., 124 S.W.3d 167, 174 (Tex. 2003) (indicating that a media defendant’s poor choice of words or content, without more, does not amount to actual malice).  The different authors and their subjective verb choices do not demonstrate that either had knowledge or acted with reckless disregard of the alleged falsity of the statements in Letters 1 or 2, or an entertainment of serious doubts as to the truth thereof.  
See Gray
, 941 S.W.2d at 330.  We conclude that the differences in word choice alone, when made by different writers, is insufficient to show actual malice.

Letter 2

In Exhibit 8, Appellant provided a copy of a letter it addressed to Appellee’s general counsel, dated August 27, 2003, in which it claimed that it had not been misrepresenting itself as a CSF.  Appellee issued Letter 2 on February 18, 2004.  Appellant argues that Letter 2, because it was issued several months after Appellant responded to Appellee’s allegedly defamatory statement, is evidence of actual malice.  However, although Appellant strongly denied that it had misrepresented itself in its response to Appellee’s cease and desist letter, the trial court did not erroneously grant Appellee’s motion for summary judgment because there was a complete absence of evidence to show that Appellee acted 
other than 
in good faith in sending Letters 1 and 2.  That is, other than Appellee’s knowledge that it had made a mistake in listing Appellant as a CSF when it had not been approved, there was nothing in Letters 1 and 2 to indicate that Appellee was acting other than in response to at least one report, memorialized in the Volar letter, that Appellant had taken advantage of the erroneous directory.

Malice exists when the evidence shows that the speaker at least entertained serious doubts as to the truth of his statements, and cannot be inferred from the character of the allegedly defamatory statement without other evidence to prove it.  
See Hanssen
, 938 S.W.2d at 93.  Taking all of Appellant’s evidence as true and indulging every reasonable inference, there is no indication that Appellee entertained serious doubts as to the truth of the alleged defamatory statements in Letters 1 and 2.  
Id
.; 
see Valence Operating Co.
, 164 S.W.3d at 661.  Letters 1 and 2 were responsive to Appellant’s alleged act of misrepresentation.  The collection of e-mails that show the interactions between Appellee and Appellant with regard to Appellant’s CSF application and the Directory listing do not demonstrate that Appellee actually believed or had serious doubts that Appellant did not misrepresent itself using the Directory.  
See Gray
, 941 S.W.2d at 330.  Because Appellant presented no evidence of actual malice sufficient to defeat Appellee’s claim to qualified privilege, we overrule Appellant’s first issue.

Appellee met the requirements of qualified privilege with regard to Appellant’s defamation per se claim.  Without this independent tort, Appellant had no cause of action for tortious interference with prospective contractual relations.  
See Brown
, 178 S.W.3d at 381-82.  Therefore, we overrule Appellant’s second issue.

CONCLUSION

Having overruled both of Appellant’s issues, we affirm the trial court’s judgment.

DIXON W. HOLMAN

JUSTICE

PANEL B:  LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED:  March 1, 2007

FOOTNOTES
1:
See
 
Tex. R. App. 
P. 47.4.

2:
There is no evidence of when Appellee declined Appellant’s CSF application.

3:
There is no evidence of how many parties received Letter 1.

4:
No evidence was presented that any of these letters had actually been sent.  However, because no party raises that issue, we will not address it.

5:
The letter was translated by a professional English/Spanish translator and interpreter, certified and licensed by the Texas Department of Licensing and Regulation.

6:
In 
Residential Dynamics, LLC v. Loveless
, a no-evidence summary judgment case, we held that the trial court implicitly overruled the movant’s objections to the nonmovant’s affidavit when it granted summary judgment.  186 S.W.3d 192, 195 (Tex. App.—Fort Worth 2006, no pet.).  However, in 
Loveless
, the only evidence presented was the nonmovant’s affidavit.  
Id
.  We concluded that the movant’s objections to the affidavit were overruled when its motion was granted.  
Id
.  Here, in contrast, Appellee presented a traditional motion for summary judgment and both parties presented evidence and  objections to each other’s affidavits.  Therefore, unlike 
Loveless
, with its single affidavit in response to a no-evidence motion, there is no basis, absent an explicit ruling on the record, to conclude whether the trial court sustained or overruled these objections. 

7:
Appellant states in its brief that Appellee distributed Letter 1 “to an undisclosed number of 
customers and clients.
” [Emphasis added.]

8:
Maldonado states in his affidavit that Appellee wrote the letters “in a good faith attempt to clarify [Appellant’s] truthful status in light of the confusion that existed as a result of the erroneous directory and the misinformation [Appellee] believed was being spread by [Appellant].”  Maldonado asserted in his affidavit that the facts stated in his affidavit were within his personal knowledge and were true and correct.  Such assertions may be sufficient to show a lack of malice if uncontradicted. 
 See Roberts
, 160 S.W.3d at 263.

9:
We note that Maldonado states in his affidavit that “[Appellant] was 
erroneously listed 
. . . in [Appellee’s Directory].”  [Emphasis added.]

10:
Honda’s e-mail address is listed as KHonda@bellhelicopter.textron.com.  We infer, for purposes of reviewing this evidence, that Honda was one of Appellee’s employees.  No direct evidence was provided that Honda was Appellee’s employee, but the issue itself is not raised by either party, other than perhaps with regard to Appellee’s authentication objections.

11:
In a previous e-mail to Moore on the same day, Honda indicated that partial approval had been granted, but that full CSF approval had two more steps, and he estimated another four to six weeks’ wait.

12:
The e-mail stated:

When we meet [sic] in El Salvador at the Bell Maintenance conference, you gave me a copy of your new approved repair station in Guatemala.  I recall allowing you to go ahead and summit [sic] your application to our CSF Department for processing and approval.  It was my impression at the time, that by having the repair station license that you physical [sic] had access to the facility.  Unfortunately, as you have informed us, there have been some hurdles in way to actually move into your “new locally approved facility.” 

At this point, we at [Appellee] have approved [Appellant] in the first step (CSF Board), and allowed to proceed to the next step “Independent Representative Board” (which is where we give the final approval to go to TEXTRON).

Due to the situation that has evolved with you getting your facility, I have asked Koichi [Honda] to hold onto your application until we can verify that you are in the facility that we will be approving.  I have asked Koichi [Honda] when you are fully installed, to make a visit and survey your new facility once you are physically in.  This will insure our management that we are approving a company that will offer the services that we would like our customers to receive.